STATE OF NORTH CAROLINA v. PHILLIP STUTTS

No. 9119SC312

(Filed 3 March 1992)

**Evidence and Witnesses § 1009 (NCI4th)— child sexual abuse victim — unavailable to testify — out of court statements admitted**

 The trial court erred in a prosecution for taking indecent liberties by ruling that a four year old girl was unavailable to testify because she could not understand the difference between truth and falsehood and because of her inability to understand "what is reality and what is imagination," then finding that her earlier out-of-court statements possessed the required circumstantial guarantees of trustworthiness and were admissible at trial. Finding a witness unavailable to testify because of an inability to tell truth from fantasy prevents that witness's out-of-court statements from possessing guarantees of trustworthiness to be admissible at trial under the residual exception set forth in N.C.G.S. § 8C-1, Rule 804(b)(5).

 **Am Jur 2d, Evidence § 496; Witnesses §§ 88-91, 93.**

 **Uniform Evidence Rule 803(24): the residual hearsay exception. 51 ALR4th 999.**

APPEAL by defendant from judgment entered 10 October 1990 in MONTGOMERY County Superior Court by *Judge Russell G. Walker, Jr.* Heard in the Court of Appeals 13 January 1992.

 Defendant was indicted on two counts of taking indecent liberties with a minor in violation of N.C. Gen. Stat. § 14-202.1. The State's evidence presented at trial tends to establish the following facts and circumstances.

Defendant is a 36-year-old married man with two children. Defendant's wife owns and operates a day-care center which is adjacent to their residence in Montgomery County. Defendant allegedly took indecent liberties with two minor girls: a fourteen-year-old (hereinafter "the teen"), and a four-year-old (hereinafter "the girl"), while they attended the day-care center.

On 31 July 1989, the teen's adoptive mother arrived at the day-care center. She testified that her daughter came running out of the day-care center, was crying and wanted to leave. Shortly afterwards, the teen's mother asked if anyone in the day-care center had hurt her. The teen responded that defendant had "twisted her nipples, touched her vagina, mashed on her chest and hit her behind." The teen's mother then called two employees who were operating the day-care center while defendant's wife was on maternity leave. She testified that each of the women informed her that the teen's accusations about defendant could not be true because he was rarely at the day-care center and was never alone with the children.

She further testified that the teen began to engage in bizarre behavior following this incident. The teen was taken to a psychiatrist who diagnosed these symptoms to be consistent with post-traumatic stress disorder. The teen was placed in Dorothea Dix Hospital for treatment and was unavailable as a witness at trial.

The Montgomery County Department of Social Services conducted an extensive investigation of the day-care center following the teen's accusations. This investigation was centered around the interviewing of ten to twelve children and led to only one additional accusation by the four-year-old girl. The girl was interviewed by a social worker, Rosemary Russell (hereinafter Russell).

Russell testified that she used anatomically correct dolls during her interviews with the girl. Russell testified that the girl told her that defendant once came out of the bathroom at the day-care center and said to her, "Are you going to see this?" The girl responded, "What is it?" Defendant then answered "a goober." Russell testified that she asked the girl what a "goober" was and that she pointed out the genitalia of the male doll. She told Russell that defendant asked her if the "goober" was soft and that she said "no." The girl also told Russell that defendant touched her "booba" and her "butt," which she identified as her vaginal area, and that she touched defendant's "butt."

The girl's parents testified that in March or April 1989 she began to have nightmares and stated she did not want to go back to the day-care center. On 3 October, the girl's mother was informed by Russell that sexual abuse had occurred at the day-care center and that the girl should be taken out of the day-care center. On 6 October, the girl informed her parents that defendant had never hurt her but if the "whole neighborhood" found out defendant would "cut their heads off." The next night, the girl told her parents that defendant had never seen her "butt-butt" and had never done anything to her.

In January 1990, the girl told her mother the same story she told Russell concerning defendant's "goober." The girl's statements were corroborated by the testimony of Melanie Thomas, an agent with the State Bureau of Investigation. Ms. Thomas interviewed the girl while investigating the allegations about defendant. Dr. Daljit Caberwal, a local urologist, testified that he examined the girl and found some irritation of the opening of her urethra. He further testified this irritation was normal in children her age and would not necessarily be linked to sexual abuse.

Defendant's evidence at trial tended to establish the following facts and circumstances. Defendant testified that he held a job with a local furniture company, has never worked at the day-care center and has never been alone with any of the children at the day-care center. Defendant has no criminal record. Defendant stated that he remembers seeing the girl once at the day-care center but was never alone with her. Defendant further stated that he was at the day-care center on 31 July 1989, the date the teen accused him of abusing her. He stated when he arrived at the day-care center his daughter was crying. One of the employees informed him that the teen had hit his daughter. Defendant and his wife were very harsh towards the teen but never touched her in any way.

Defendant's employer testified to defendant's work record and stated defendant often worked late or stayed late to play cards with some of his fellow employees. Several employees of the day-care center testified to day-care center procedures and the problems they had encountered with the teen, especially her hitting other children. One employee testified that whenever defendant was at the day-care center he was never alone with the girl.

STATE v. STUTTS

[105 N.C. App. 557 (1992)]

Defendant's wife testified that her husband usually did not arrive at home until 7:00 or 7:30 p.m. She further stated that her husband would never be allowed to be alone with the children because of day-care center regulations. Defendant's wife never heard of any allegation of sexual abuse either from any child or parent involved with the day-care center. She was informed of the allegations only when the Department of Social Services contacted her to set up interviews at the day-care center with various children.

Defendant was indicted on 13 November 1989 and tried by a jury on 1 October 1990 in Montgomery County Superior Court. Defendant made a motion to dismiss the charges against him for insufficiency of the evidence, which was denied. Defendant was acquitted of the charge relating to the teen and was convicted of the charge relating to the girl. Defendant was sentenced to the presumptive term of three years imprisonment for this crime. Defendant appeals.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Mary Jill Ledford, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Mark D. Montgomery, for defendant-appellant.*

WELLS, Judge.

Defendant presents seventeen assignments of error to this Court for review. He does not address his first seven assignments as well as his eleventh, twelfth, thirteenth, sixteenth and seventeenth assignments and they are therefore deemed abandoned. N.C.R. App. P., Rule 28. In his remaining assignments, defendant contends the trial court erred in ruling that the girl was unavailable to testify and that the State had given improper notice of its intention to use statements made by the girl to others at trial.

Defendant further contends the trial court erred in allowing three of the State's witnesses to testify concerning the statements made by the girl under Rule 804(b)(5) of the North Carolina Rules of Evidence. Finally, defendant contends that the trial court erred in denying his motion to dismiss the charges for insufficiency of the evidence. We hold that the trial court erred in admitting the girl's out-of-court statements pursuant to Rule 804(b)(5) of the Rules of Evidence and award a new trial.

Defendant first assigns error to the trial court's finding that the girl was unavailable to testify at trial and that the State had given adequate notice of its intent to introduce the girl's statements at trial. Defendant contends these findings violated his rights to present a defense and to due process which are guaranteed under the State and Federal Constitutions.

Defendant next assigns error to the trial court's allowing three of the State's witnesses to testify concerning statements the girl made to them. He contends these statements, which pertain to defendant's alleged acts of abuse, were erroneously admitted under the residual or "catch-all" exception to the hearsay rule as found in Rule 804(b)(5) of the North Carolina Rules of Evidence.

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (1990). A hearsay statement is "not admissible except as provided by statute or by these rules." N.C. Gen. Stat. § 8C-1, Rule 802 (1990). In order for evidence to be admissible under the residual exception set out in Rule 803(24) or Rule 804(b)(5), it must possess circumstantial guarantees of trustworthiness equivalent to those required under the enumerated exceptions to the hearsay rule. *State v. Smith*, 315 N.C. 76, 337 S.E.2d 833 (1985). Our Courts have held that the threshold determination of trustworthiness is the most significant requirement of admissibility under the residual hearsay exception. *Smith, supra.*

In *State v. Deanes*, 323 N.C. 508, 374 S.E.2d 249 (1988), a sexual abuse (rape) case involving a five-year-old female victim who was declared unavailable as a witness, our Supreme Court analyzed and discussed at length the principles of law applying to the admissibility of hearsay in cases such as the one before us in this appeal. In *Deanes*, the Court stated the requirement in such cases dealing with the residual or "catch-all" exception to the hearsay rule, that the trial court must determine, in the following order:

(A) Has proper notice been given?

(B) Is the hearsay not specifically covered elsewhere?

(C) Is the statement trustworthy?

(D) Is the statement material?

(E) Is the statement more probative on the issue than any other evidence which the proponent can procure through reasonable efforts?

(F) Will the interests of justice be best served by admission?

The Court went on to state the rule that "the trial court is required to make both findings of fact and conclusions of law on the issues of trustworthiness and probativeness, because they embody the two-prong constitutional test for the admission of hearsay under the confrontation clause, *i.e.*, necessity and trustworthiness" *citing Ohio v. Roberts*, 448 U.S. 56, 65 L.E.2d 597 (1980) and *State v. Smith*, 312 N.C. 361, 323 S.E.2d 316 (1984). We center our discussion on the threshold question of trustworthiness.

The Court set out factors to be considered in determining whether hearsay statements admitted under Rule 804(b)(5) possess sufficient indicia of trustworthiness. The factors are:

(1) Assurances of the declarant's personal knowledge of the underlying event; (2) the declarant's motivation to speak the truth or otherwise; (3) whether the declarant recanted the statements; and (4) the practical availability of the declarant at trial for meaningful cross-examination.

*State v. Smith*, 315 N.C. 76, 337 S.E.2d 833 (1985), and *State v. Triplett*, 316 N.C. 1, 340 S.E.2d 736 (1986). Significantly, in *State v. Nichols*, 321 N.C. 616, 365 S.E.2d 561 (1988), the fourth factor was reworded to clarify the purpose of this factor, as follows:

(4) the reason, within the meaning of Rule 804(a), for the declarant's unavailability.

*See State v. Garner*, 330 N.C. 273, 410 S.E.2d 861 (1991).

In the present case, the trial court conducted a *voir dire* hearing to determine the girl's availability as a witness. The trial court found the girl unavailable to testify because she could not understand the difference between truth and falsehood and because of her inability to understand "what is reality and what is imagination." The trial court then found that the girl's earlier out-of-court statements possessed the required circumstantial guarantees of trustworthiness and were admissible at trial. These findings are simply inconsistent.

It is illogical that one be held unavailable to testify due to an inability to discern truth from falsehood or to understand the difference between reality and imagination and yet have their out-of-court statements ruled admissible because they possess guarantees of trustworthiness. The very fact that a potential witness cannot tell truth from fantasy casts sufficient doubt on the trustworthiness of their out-of-court statements to require excluding them. We hold that finding a witness unavailable to testify because of an inability to tell truth from fantasy prevents that witness' out-of-court statements from possessing guarantees of trustworthiness to be admissible at trial under the residual exception set forth in Rule 804(b)(5).

We hold that the trial court erred in allowing the girl's statements to be admitted and that this error was obviously prejudicial to defendant. For these reasons, there must be a

New trial.

Chief Judge HEDRICK and Judge JOHNSON concur.