IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA17-713

 Filed: 17 April 2018

Catawba County, Nos. 13CRS057195-96, 14CRS001170-71

STATE OF NORTH CAROLINA

 v.

ZACHARY ALLEN BLANKENSHIP, Defendant.

 Appeal by Defendant from judgments entered 24 February 2017 by Judge

Nathaniel J. Poovey in Catawba County Superior Court. Heard in the Court of

Appeals 7 February 2018.

 Attorney General Joshua H. Stein, by Special Deputy Attorney General Anne
 M. Middleton, for the State.

 Mark Montgomery, for defendant-appellant.

 HUNTER, JR., Robert N., Judge.

 Zachary Allen Blankenship (“Defendant”) appeals following jury verdicts

convicting him of rape of a child by an adult offender, four counts of taking indecent

liberties with a child, and three counts of sexual offense with a child by an adult

offender. Following the verdicts, the court sentenced Defendant to two consecutive

terms of 300 to 420 months imprisonment and ordered Defendant to register as a

sexual offender for the rest of his natural life. On appeal, Defendant contends the

court erred in admitting hearsay statements and denying his motion to dismiss. In
 STATE V. BLANKENSHIP

 Opinion of the Court

the alternative, Defendant argues his counsel rendered ineffective assistance of

counsel. We hold the court did not err in admitting hearsay statements, but reverse

the court’s denial of Defendant’s motion to dismiss the three counts of statutory

sexual offense with a child by an adult offender and four counts of indecent liberties

charges. We dismiss, without prejudice to his right to file a motion for appropriate

relief, Defendant’s ineffective assistance of counsel claim.

 I. Factual and Procedural History

 On 3 February 2014, a Catawba County Grand Jury indicted Defendant for

one count of rape of a child, four counts of taking indecent liberties with a child, and

three counts of sexual offense with a child. On 15 December 2016, the State filed a

“Motion to Admit Hearsay Statements of the Victim into Evidence through Other

Exceptions Clause 803 & 804[.]” (All capitalized in original). On 19 December 2016,

Defendant filed his objection to the State’s motion. Also on 19 December 2016,

Defendant filed a motion to suppress his confession.

 On 3 January 2017, the court held a hearing on Defendant’s motion to suppress

and the State’s motion to admit hearsay statements. The State and Defendant

stipulated to Rose’s1 unavailability for purposes of hearsay exceptions.

 The State first called Defendant’s mother, Gabrielle. On 30 November 2013,

Gabrielle waited for Rose’s mother, Tammy, to drop Rose off at Gabrielle’s home.

 1 We use this pseudonym to protect the identity of the juvenile and for ease of reading. N.C.
R. App. P. 3.1 (2017).

 -2-
 STATE V. BLANKENSHIP

 Opinion of the Court

Typically, Tammy dropped Rose off at 8:30 in the morning. However, that day,

Tammy did not arrive at 8:30, so Gabrielle and her husband went to Tammy’s

workplace. Upon arriving, Tammy told them she ran late that morning, so Rose

stayed home with Defendant. Tammy offered to call Defendant, but Gabrielle said

not to, because she would run errands before picking up Rose.

 Gabrielle and her husband, Keith, arrived at Defendant’s home and knocked

on the door. As Gabrielle slightly opened the door, Defendant “hollered no, wait a

minute, wait a minute.” Gabrielle shut the door, paused, grabbed the doorknob again,

and Defendant again said, “wait a minute.” Gabrielle told Defendant to hurry up.

Defendant opened the door. Gabrielle saw Rose, who was wearing a t-shirt, but no

bottoms. Gabrielle told Defendant he needed to stop “let[ting] her run around

naked[,]” and Defendant explained he was potty training Rose. Gabrielle put a diaper

on Rose, dressed Rose, and brought Rose to Keith’s truck.

 As Gabrielle placed Rose in the car seat, Rose said, “daddy put his weiner on

my coochie.” Gabrielle “was blown away” because she “never heard her say anything

like that before.” Gabrielle instructed Rose to “tell poppy what [she] just told nana.”

Rose “repeated the words exactly.” Keith said, “I don’t understand what a coochie is,

and she pointed to her vagina.” Keith wanted to confront Defendant, but Gabrielle

told him they would “take care of this in another way.” Gabrielle and Keith brought

Rose to the emergency room.

 -3-
 STATE V. BLANKENSHIP

 Opinion of the Court

 On cross-examination, Gabrielle indicated she was not “concerned” about

Rose’s “physical or mental condition” when she saw Rose at Defendant’s home.

Additionally, Rose did not “indicate any pain or suffering[.]” Rose “was normal” and

not crying when she talked with Gabrielle.

 The State next called Keith Blankenship, Defendant’s father. Keith’s

testimony regarding the morning of 30 November 2013 matched Gabrielle’s

testimony. Keith described Rose as “act[ing] like [Rose]” that morning and as

“[n]ormal.”

 The State called Adrienne Opdike, a former victim advocate at the Children’s

Advocacy and Protection Center.2 Odpike interviewed Rose on 12 December 2013. In

the interview, when asked about “boo-boo’s”, Rose said, “daddy put his weiner in my

coochie and I bleed. I have blood.” While Odpike did not say “it in [Rose’s] verbatim

language, . . . [Rose] did say daddy, coochie, blood together. She repeated that several

times.” Rose also mentioned something “coming out of the weiner” but could not

elaborate.

 The State next called Bobbi Christopher, Rose’s second cousin’s wife. Bobbi

first met Rose in 2013, when Rose was two years old. While on vacation in November

2013, Bobbi received a text message from Tammy, asking if she and Rose could stay

with Bobbi and her husband. Bobbi agreed to let them stay at her home.

 2 At the time of the hearing, Opdike was the director of the Children’s Advocacy and Protection
Center.

 -4-
 STATE V. BLANKENSHIP

 Opinion of the Court

 In early December 2013, the first time Bobbi changed Rose’s diaper, Rose “put

her hand on her vagina and . . . [said] daddy put his weinie in me coochie.” Rose said

this statement and “I bleed in my coochie” “every time” Bobbi changed Rose’s diaper.

Bobbi described the remarks as “[s]pontaneous.”

 In an oral ruling, the court admitted Rose’s statements to Gabrielle and Keith

under Rule 803(1) (Present Sense Impression), Rule 803(2) (Excited Utterance), and

the residual exception of Rule 804(b)(5) of the North Carolina Rules of Evidence. The

court also admitted Rose’s statements to Opdike under the residual exception of Rule

804(b)(5). Lastly, the court admitted Rose’s statement to Bobbi under Rule 803(1)

(Present Sense Impression), Rule 803(3) (Statement of the Then Existing Mental,

Emotional, or Physical Condition), and the residual exception of Rule 804(b)(5). In

an order entered 6 January 2017, the court denied Defendant’s motion to suppress

his confession.3

 On 20 February 2017, the court called Defendant’s case for trial. The State

first called Gabrielle. Gabrielle’s testimony regarding 30 November 2013 matched

her testimony at the 3 January 2017 hearing. Defendant did not object to any parts

of the testimony regarding Rose’s statements to Gabrielle.

 The State next called Keith, whose testimony largely matched the testimony

from the January hearing. Keith added when Gabrielle told Tammy about the

 3 Defendant does not present any appellate arguments regarding whether his confession was
voluntary.

 -5-
 STATE V. BLANKENSHIP

 Opinion of the Court

allegations, Tammy “got very angry . . . and started hollering that her husband is not

a pervert[.]” Again, Defendant did not object to any of Keith’s testimony about Rose’s

statements to him.

 The State called Amy Walker Mahaffey, a registered nurse in the emergency

room at Lake Norman Regional Medical Center. The State tendered Mahaffey as an

expert in performing sexual assault exams. Before Mahaffety testified about what

Gabrielle told her that Rose said, Defendant objected. The court dismissed the jury,

and the following discussion ensued:

 THE COURT: . . . And then the other argument that you
 had was what?

 [DEFENSE COUNSEL]: No exceptions to the hearsay,
 particularly on those. You know, there is a medical
 diagnosis exception in this particular case, but --

 THE COURT: So in regards to what the -- what [Rose]
 Blankenship said to the grandparents in the car -- and did
 I hear from Bobbi Christopher? I think I did.

 [STATE]: You did, Your Honor.

 THE COURT: And that is what she said to her in the house
 that day.

 [STATE]: Yes.

 THE COURT: Okay.

 [DEFENSE COUNSEL]: Which I'll renew my objection at
 this time knowing that it’s been ruled on just for
 preservation.

 -6-
 STATE V. BLANKENSHIP

 Opinion of the Court

The court admitted the statements, under Rule 803(4) of the North Carolina Rules of

Evidence—statements made for the purpose of a medical diagnosis or treatment.

 During the examination, Rose said, “daddy put his weiner in my coochie[.]”

Mahaffey examined Rose’s genitalia, and Rose told Mahaffey “nothing hurt.” Upon

review, “[t]here were no obvious signs of trauma, meaning that there had been no

blunt force trauma to the area.” However, lack of trauma did not mean Rose was not

penetrated. Additionally, the exam and the lack of findings were consistent with

what Rose reported to Mahaffey.

 The State called Bobbi Christopher. Bobbi’s testimony regarding how Rose

came to live with her and Rose’s comments during diaper changes matched her

testimony at the January hearing. At the time of the trial, Rose lived with Bobbi’s

daughter and son-in-law.

 The State next called Adrienne Opdike. The State tendered Opdike as an

expert in forensic interviewing. Before testifying regarding what Rose told her in the

interview, Defendant objected. Defense counsel “assert[ed] that objection as to

everything Ms. Opdike says that [Rose] says” but would also object to three specific

lines. As at the January hearing, Opdike testified Rose told her “daddy put his wiener

in her coochie and she bleed.” Rose could not answer “specific questions” about the

incident, but kept “repeating that statement.” Rose also stated, “weiner come out,

weiner come out.”

 -7-
 STATE V. BLANKENSHIP

 Opinion of the Court

 The State called Marcella McCombs with the Catawba County Sheriff’s Office.

In 2013, McCombs worked as a child sexual assault investigator. On 13 December

2013, McCombs executed two search warrants—one for Defendant’s home and one

for electronics in the home—and arrested Defendant. Investigators searched

Defendant’s electronics for pornographic material, but did not find any on

Defendant’s computer.

 McCombs returned to the Sheriff’s Office to interview Defendant. McCombs

read Defendant his Miranda rights, and Defendant signed a form, waiving the rights.

McCombs recorded the interview with Defendant, which was published to the jury.

 In the beginning of the interview, Defendant denied watching pornography in

the past two years or touching Rose inappropriately. However, Defendant told

officers he and Tammy often had sex together while Rose laid in the bed. In several

instances, they would “continue”, even after Rose awoke. Additionally, sometimes

Rose would climb on his back while he was having sex with Tammy.

 Defendant admitted to watching pornography in front of Rose. Additionally,

Rose witnessed Defendant ejaculate. Two weeks before the interview, Defendant

watched pornography on his computer. Rose sat on a nearby couch while Defendant

watched and masturbated.

 -8-
 STATE V. BLANKENSHIP

 Opinion of the Court

 Defendant would also put lotion on his fingers and “rub” Rose’s vagina. He

rubbed her “about three” times, all within the month prior to the interview. However,

Defendant denied Rose’s allegations of him putting his penis “in her coochie.”

 Another time, Defendant watched videos “of a sexual nature” on the computer.

Rose “grabbed” and “squeezed” his penis. He thought she learned how to grab his

penis from watching him masturbate.

 The State called Tammy. On 30 November 2013, Tammy, Gabrielle, and Keith

arranged for Tammy to bring Rose to her grandparents’ on Tammy’s way to work.

However, Tammy woke up late and left Rose at home with Defendant. Gabrielle and

Keith arrived at Tammy’s work and discussed picking up Rose from Tammy and

Defendant’s home. Tammy asked if they wanted her to call Defendant, so he would

be ready for their arrival. Gabrielle and Keith “said that . . . they weren’t for sure if

they were going to pick her up then[,]” so Tammy did not call Defendant.

 Tammy got off work around 3:00 p.m. and called Gabrielle and Keith, who told

her to come to their house to pick up Rose. When Tammy arrived at their home,

Gabrielle told Tammy “something had happened and [she] wasn’t going to like it[.]”

Gabrielle and Keith told Tammy “[Defendant] had been reported as a risk to [Rose].”

Tammy was in shock and “never thought [Defendant] to be a threat to [Rose].” Rose

never made similar statements to Tammy about Defendant.

 -9-
 STATE V. BLANKENSHIP

 Opinion of the Court

 Tammy brought Rose back to her and Defendant’s home. Tammy told

Defendant of the allegation, “and he was a bit in shock[.]” Tammy and Rose left

Defendant’s home and stayed the night at their church. Tammy and Rose then moved

in with Bobbi, but Tammy soon moved back in with Defendant.

 The State next called Jennifer Owen, a supervisor with Catawba County

Department of Social Services (“DSS”). In November 2013, Owen worked as a

forensic investigator with DSS. On or about 2 December 2013, Owen met with

Tammy and Rose, and Owen explained the allegations against Defendant to Tammy.

Tammy “was upset about it. She was somewhat angry saying that she didn’t believe

it, that this was a waste of time, that [Defendant] loved [Rose] and that he was more

protective of [Rose] than she was.” Tammy told Owen how Rose walked in on Tammy

and Defendant having sex. Upon seeing Rose, the two separated and covered

themselves. Rose said “weiner in coochie” and repeated the statement several times

 On 4 December 2013, a nurse at Children’s Advocacy and Protection Center

completed a forensic medical exam of Rose. During the exam, Rose “indicated there

was blood in her coochie and it came from the bed” and said “mommy broke it[.]”

 After the exam, Owen scheduled a forensic interview of Rose. When Owen told

Tammy about Rose’s statements in the interview,4 Tammy “didn’t agree. She didn’t

 4 Owen did not testify, specifically, about the statements Rose made in the forensic interview.

 - 10 -
 STATE V. BLANKENSHIP

 Opinion of the Court

believe it. She continued to defend [Defendant] and state he would never do any of

this and that [Rose] wasn’t telling the truth and none of this had ever happened.”

 On 13 December 2013, McCombs called Owen and told her officers arrested

Defendant and Defendant “confessed.” Around 2 p.m., Owen arrived at the Catawba

County Detention Center. After receiving investigators’ permission, Owen spoke

with Defendant. Defendant told Owen:

 he had not done anything and then he said that he had
 already told investigators everything that had
 happened . . . . He told me that he had touched [Rose]. He
 said that he sleeps naked with [Rose], that him and Tammy
 sleep together and [Rose] sleeps in the bed with them and
 that he sleeps naked. He told me that there were multiple
 times when he and Tammy had engaged in sexual
 intercourse and that [Rose] would usually wake up.
 Sometimes she would watch but there would be times that
 she would actually crawl on his back while they were
 having sex and that they would not always stop because he
 didn’t want to stop.

 Owen called Tammy and informed her of Defendant’s statements. Tammy

“argued [Defendant] did not confess” and asked to speak to Defendant, but Owen did

not have such authority. Tammy told Owen that Rose made those statements

because Rose saw them have sex in October. Tammy also stated Defendant’s

statements about Rose climbing on his back during sex were truthful. Additionally,

Owen testified on 11 November 2013, Tammy told a social worker Rose had made a

statement about her coochie, and Tammy scolded her and said “you’re not supposed

 - 11 -
 STATE V. BLANKENSHIP

 Opinion of the Court

to say that until you’re married.” Throughout her conversations with Owen, Tammy

changed her story.

 Next, the State called Thad Scronce, a lieutenant with the Catawba County

Sheriff’s Office. In November and December 2013, Lt. Scronce worked as a supervisor

in the Special Victim’s Unit and supervised McCombs. On 13 December 2013, Lt.

Scronce accompanied other investigators to Defendant’s home, where they executed

two warrants. Investigators searched Defendant’s electronics for child pornography,

but did not find any.

 Lt. Scronce returned to the Sheriff’s Office and joined McCombs to interview

Defendant. The interview lasted approximately two hours and forty-five minutes.

Defendant initially denied the allegations. However, McCombs and Lt. Scronce

continued the interview because Defendant changed his story and contradicted

himself.

 The State rested. Defendant moved to dismiss all the charges. The court

denied Defendant’s motion. Defendant did not present any evidence.

 The jury found Defendant guilty of rape of a child by an adult offender, four

counts of taking indecent liberties with a child, and three counts of sexual offense

with a child by an adult offender. The court sentenced Defendant to two consecutive

terms of 300 to 420 months imprisonment and ordered Defendant to register as a

 - 12 -
 STATE V. BLANKENSHIP

 Opinion of the Court

sexual offender for the rest of his natural life. Defendant gave timely oral notice of

appeal.

 II. Standard of Review

A. Hearsay Statements

 “The trial court’s determination as to whether an out-of-court statement

constitutes hearsay is reviewed de novo on appeal.” State v. Castaneda, 215 N.C.

App. 144, 147, 715 S.E.2d 290, 293 (2011) (citation omitted).

 “[A] trial court’s evidentiary ruling on a pretrial motion to suppress is not

sufficient to preserve the issue of admissibility for appeal unless a defendant renews

the objection during trial.” State v. Gullette, ___ N.C. App. ___, ___, 796 S.E.2d 396,

399 (2017) (citation, brackets, and quotation marks omitted). See State v. Oglesby,

361 N.C. 550, 554, 648 S.E.2d 819, 821 (2007). Where Defendant renewed his

objection at trial, we review the erroneous admission of hearsay for prejudicial error.

State v. Wilkerson, 363 N.C. 382, 420, 683 S.E.2d 174, 197 (2009); N.C. Gen. Stat. §

15A-1443(a) (2017). “A defendant is prejudiced by evidentiary error ‘when there is a

reasonable possibility that, had the error in question not been committed, a different

result would have been reached at the trial out of which the appeal arises.’ ” Id. at

415, 683 S.E.2d at 194 (quoting N.C. Gen. Stat. § 15A-1443(a)).

 However, where Defendant failed to object to the admissibility of certain

hearsay statements, we review for plain error. N.C. R. App. P. 10(a)(4) (2017). Plain

 - 13 -
 STATE V. BLANKENSHIP

 Opinion of the Court

error arises when the error is “so basic, so prejudicial, so lacking in its elements that

justice cannot have been done[.]” State v. Odom, 307 N.C. 655, 660, 300 S.E.2d 375,

378 (1983) (quotation marks and citation omitted). “Under the plain error rule,

defendant must convince this Court not only that there was error, but that absent

the error, the jury probably would have reached a different result.” State v. Jordan,

333 N.C. 431, 440, 426 S.E.2d 692, 697 (1993) (citation omitted).

 However, a court’s determination to admit a hearsay statement under the

residual exception of Rule 804(b)(5) of the North Carolina Rules of Evidence is

reviewed for abuse of discretion. State v. Brigman, 178 N.C. App. 78, 87, 632 S.E.2d

498, 504 (2006) (citation omitted). “Abuse of discretion results where the court’s

ruling is manifestly unsupported by reason or is so arbitrary that it could not have

been the result of a reasoned decision.” State v. Hennis, 323 N.C. 279, 285, 372 S.E.2d

523, 527 (1988) (citation omitted).

 Thus, regarding the hearsay statements, if the trial court admitted the

statements under an exception other than the residual exception, we review for either

plain error or prejudicial error, dependent upon whether Defendant objected at trial.

We review admission under the residual exception for abuse of discretion.

B. Motion to Dismiss

 Regarding Defendant’s motion to dismiss for violation of the corpus delicti rule,

“[t]his Court reviews the trial court’s denial of a motion to dismiss de novo.” State v.

 - 14 -
 STATE V. BLANKENSHIP

 Opinion of the Court

Smith, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007) (citation omitted). See also

State v. Cox, 367 N.C. 147, 154-55, 749 S.E.2d 271, 277 (2013) (applying the same

standard when analyzing the corpus delicti rule). “Upon defendant’s motion for

dismissal, the question for the Court is whether there is substantial evidence (1) of

each essential element of the offense charged, or of a lesser offense included therein,

and (2) of defendant’s being the perpetrator of such offense. If so, the motion is

properly denied.” State v. Fritsch, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000)

(citations and quotations omitted). “Substantial evidence is such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion.” State v.

Smith, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980) (citations omitted).

 III. Analysis

 On appeal, Defendant contends: (1) the court erred in admitting hearsay

statements; (2) the State failed to sufficiently corroborate his confession, in violation

of the corpus delicti rule; and (3) trial counsel rendered ineffective assistance of

counsel. We address his arguments in turn.

A. Hearsay Statements

 Hearsay “is a statement, other than one made by the declarant while testifying

at the trial or hearing, offered in evidence to prove the truth of the matter asserted.”

N.C. R. Evid. 801(c) (2017). Unless excepted by statute or the North Carolina Rules

of Evidence, hearsay is generally inadmissible. N.C. R. Evid. 802 (2017).

 - 15 -
 STATE V. BLANKENSHIP

 Opinion of the Court

 i. Rose’s Statements to Her Grandparents, Gabrielle and Keith

 At the 3 January 2017 pre-trial hearing, the court admitted Rose’s statements

to Gabrielle and Keith for the following reasons:

 I think based upon the evidence, based upon the fact
 that the defendant said that the victim made that
 statement and there’s other corroborating evidence that
 the victim made that statement and that based upon the
 time consideration of when the victim said the last time he
 -- when the defendant said the last time he committed any
 act of that nature with the alleged victim was two weeks
 ago and that this incident with Gabrielle and Keith
 Blankenship occurred almost exactly two weeks before
 that, that it does come in under a Present Sense Impression
 and an excited utterance.
 I also believe that it would be admissible as
 substantive evidence pursuant to 804(b)(5), other
 exceptions. Specifically I find that based upon all the
 evidence that I’ve heard in this motion and in the previous
 one, that this statement has, in comparison with all of the
 hearsay exceptions, equivalent circumstantial guarantees
 of trustworthiness.
 The statement is offered as evidence of a material
 fact. The statement is more probative and on point the
 witness offered than any other evidence which the
 proponent can procure through reasonable efforts, taking
 into consideration the fact that the defense has stipulated
 that the witness is unavailable, and I’ll also find that the
 general purposes of the rules of evidence and the interest
 of justice will be served by the admission of the statement
 into evidence.
 It also appears that the State has given sufficient
 and appropriate notice to defense of its intention to offer
 the statement and the particulars of it.

 - 16 -
 STATE V. BLANKENSHIP

 Opinion of the Court

 Although Defendant filed a motion to suppress these statements, he did not

object to the testimony at trial. See State v. Ray, 364 N.C. 272, 277, 697 S.E.2d 319,

322 (2010). Thus, we review for plain error. N.C. R. App. 10(c)(4).

 (1) Excited Utterance Exception

 Rule 803(2) excepts excited utterances, which are “statement[s] relating to a

startling event or condition made while the declarant was under the stress of

excitement caused by the event or condition.” N.C. R. Evid. 803(2). “To qualify as an

excited utterance, the statement must relate to ‘(1) a sufficiently startling experience

suspending reflective thought and (2) be a spontaneous reaction, not one resulting

from reflection or fabrication.’” State v. McLaughlin, ___ N.C. App. ___, ___, 786

S.E.2d 269, 283, disc. review denied, ___ N.C. ___, 787 S.E.2d 29 (2016) (quoting State

v. Maness, 321 N.C. 454, 459, 364 S.E.2d 349, 351 (1988)). Traditionally, when

determining spontaneity, courts looked at the time lapse between the event and

statement; however, “ ‘the modern trend is to consider whether the delay in making

the statement provided an opportunity to manufacture or fabricate the statement.’ ”

Id. at ___, 786 S.E.2d at 283 (quoting State v. Smith, 315 N.C. 76, 87, 337 S.E.2d 833,

841 (1985)).

 Here, the State correctly asserts the delay between Defendant’s acts and Rose’s

statements to Gabrielle and Keith does not bar admission of the statements as excited

utterances. However, the State presented insufficient evidence to establish “the

 - 17 -
 STATE V. BLANKENSHIP

 Opinion of the Court

declarant was under the stress” of a startling event. N.C. R. Evid. 803(2). See also

McLaughlin, ___ N.C. App. at ___, 786 S.E.2d at 284 (citation omitted). Stress is one

of the crucial factors in this hearsay exception, and the State presented no evidence

of Rose’s stress. See Smith, 315 N.C. at 88, 337 S.E.2d at 842 (stating spontaneity

and stress are the crucial factors). Thus, while spontaneity does not preclude the

statements from being excited utterances, the absence of stress does.

 The State cites to McLaughlin in support of its contention the statement is an

excited utterance. However, in McLaughlin, our Court specifically discussed the

declarant’s stress while making statements to his mother. There, the declarant

“came into the house ‘frantically’ and was ‘shaking’ while telling [his mother about

the abuse.]” McLaughlin, ___ N.C. App. at ___, 786 S.E.2d at 283; see also Smith, 337

N.C. at 88, 315 S.E.2d at 842 (concluding a statement by a victim was an excited

utterance when the child was afraid and scared when relating the incident). In

contrast, both Gabrielle and Keith described Rose as “normal” and “happy” when

making the statements. As such, the trial court erred in admitting the statements as

excited utterances.

 (2) Present Sense Impression Exception

 Rule 803(1) excepts from the rule against hearsay a present sense impression,

which is “[a] statement describing or explaining an event or condition made while the

declarant was perceiving the event or condition, or immediately thereafter.” N.C. R.

 - 18 -
 STATE V. BLANKENSHIP

 Opinion of the Court

Evid. 803(1) (2017). “The basis of the present sense impression exception is that

closeness in time between the event and the declarant’s statement reduces the

likelihood of deliberate or conscious misrepresentation.” State v. Pickens, 346 N.C.

628, 644, 488 S.E.2d 162, 171 (1997) (citation omitted). “There is no rigid rule about

how long is too long to be ‘immediately thereafter.’ ” State v. Clark, 128 N.C. App.

722, 725, 496 S.E.2d 604, 606 (1998) (citing State v. Cummings, 326 N.C. 298, 314,

389 S.E.2d 66, 75 (1990)).

 In its brief, the State argues “[t]he circumstances indicated that defendant

likely was in the process of sexually abusing the victim when the Blankenships

arrived at this residence, and defendant confessed to repeatedly abusing her over the

previous month.” However, at trial, the State argued:

 The State did not allege the 30th as being the day
 when he actually had sex with the child. We allege the full
 month. The reason why we allege that full month for all
 these charges is because the defendant indicated that that
 was the time in which he was doing inappropriate things
 with his daughter.
 He did admit the last time he did something
 inappropriate, in the interview, was two weeks prior which
 would be that 30th. But the State’s not saying that on that
 30th that that was the exact day that he actually used his
 penis to penetrate her or his finger to penetrate her. The
 defendant didn’t make clear what exactly he did to her on
 that particular day.

 - 19 -
 STATE V. BLANKENSHIP

 Opinion of the Court

During his confession, Defendant admitted he watched pornography two weeks

before. While admitting he touching Rose “about three times[,]” he said all three

times occurred in the month prior.

 The record lacks evidence of exactly when the sexual misconduct occurred, and,

thus, we cannot conclude the trial court properly admitted the statements as present

sense impressions. See Smith, 315 N.C. at 89, 337 S.E.2d at 842-43 (citation omitted)

(noting leniency in the timing of the excited utterance hearsay exception is

inapplicable when there is no evidence of exactly when the misconduct occurred). See

also State v. Hoxit, No. COA14-439, 2014 WL 7472946, at *4-*5 (unpublished) (N.C.

Ct. App. Dec. 31, 2014) (applying Smith to the present sense impression exception

and holding a statement was not a present sense impression because there was no

evidence the alleged misconduct occurred immediately before the declarant made the

statements). Accordingly, here, the trial court erred in admitting the statement as a

present sense impression.

 (3) Residual Exception

 Finally, Rule 804(b)(5) excepts from the rule against hearsay certain

statements “having equivalent circumstantial guarantees of trustworthiness[.]”5

 5 As stated supra, we review the Court’s determination under the residual exception for abuse
of discretion. However, our Supreme Court held that discretionary decisions of the trial court are not
subject to plain error review. State v. Steen, 352 N.C. 227, 256, 536 S.E.2d 1, 18 (2000) (stating that
the North Carolina Supreme Court “has not applied the plain error rule to issues which fall within the
realm of the trial court’s discretion”), cert. denied, 531 U.S. 1167, 148 L. Ed. 2d 997 (2001). See also

 - 20 -
 STATE V. BLANKENSHIP

 Opinion of the Court

N.C. R. Evid. 804(b)(5). In State v. Triplett, the Supreme Court adopted a six-part

test for admitting statements under the residual exception in Rule 804(b)(5): (1) has

proper notice been given; (2) is the hearsay covered by any of the exceptions listed in

Rule 804(b)(1)-(4); (3) is the hearsay statement trustworthy; (4) is the statement

material; (5) is the statement more probative on the issue than any other evidence

which the proponent can procure through reasonable efforts; and (6) will the interests

of justice be best served by admission. 316 N.C. 1, 9, 340 S.E.2d 736, 741 (1986).

 When determining trustworthiness, the court should consider: “(1) the

declarant’s personal knowledge of the underlying event; (2) the declarant’s motivation

to speak the truth; (3) whether the declarant recanted; and (4) the reason, within the

meaning of Rule 804(a), for the declarant’s unavailability.” State v. Nichols, 321 N.C.

616, 624, 365 S.E.2d 561, 566 (1988) (citations omitted). If the court fails to make the

proper findings to establish the trustworthiness of a statement, the appellate courts

can “review the record and make our own determination.” State v. Valentine, 357

N.C. 512, 518, 591 S.E.2d 846, 853 (2003). See also State v. Daughtry, 340 N.C.

488,514, 459 S.E.2d 747, 760 (1995), cert. denied, 516 U.S. 1079, 133 L. Ed. 2d 736

(1996); State v. Swindler, 339 N.C. 469, 474-75, 450 S.E.2d 907, 911 (1994),

State v. Norton, 213 N.C. App. 75, 81, 712 S.E.2d 387, 391 (2011). Nevertheless, as our Court did in
Norton, “in the interest of ensuring that [Defendant] had a fair trial, we address the merits of [his]
argument.” Id. at 81, 712 S.E.2d at 391.

 - 21 -
 STATE V. BLANKENSHIP

 Opinion of the Court

disapproved of on other grounds, State v. Jackson, 348 N.C. 644, 653, 503 S.E.2d 101,

106-07 (1998).

 At the suppression hearing, the court concluded:

 I also believe that it would be admissible as
 substantive evidence pursuant to 804(b)(5), other
 exceptions. Specifically I find that based upon all the
 evidence that I’ve heard in this motion and in the previous
 one, that this statement has, in comparison with all of the
 hearsay exceptions, equivalent circumstantial guarantees
 of trustworthiness.
 The statement is offered as evidence of a material
 fact. The statement is more probative and on point the
 witness offered than any other evidence which the
 proponent can procure through reasonable efforts, taking
 into consideration the fact that the defense has stipulated
 that the witness is unavailable, and I’ll also find that the
 general purposes of the rules of evidence and the interest
 of justice will be served by the admission of the statement
 into evidence.
 It also appears that the State has given sufficient
 and appropriate notice to defense of its intention to offer
 the statement and the particulars of it.

 The court engaged in steps one and four through six. However, the court did

not determine whether the statement fits within any of the Rule 804(b)(1)-(4)

exceptions. While we note the State did not argue for admission under another Rule

804(b) exception, we must conclude the court erred in failing to enter its conclusion

in the record of whether the statement was admissible under another exception. See

State v. Moore, 87 N.C. App. 156, 158, 360 S.E.2d 293, 295 (1987).

 - 22 -
 STATE V. BLANKENSHIP

 Opinion of the Court

 Additionally, the court failed, in compliance with the requirement for step

three, to “include in the record his findings of fact and conclusions of law that the

statement possesses equivalent circumstantial guarantee of trustworthiness.”

Triplett, 316 N.C. at 9, 340 S.E.2d at 741 (citation and quotation marks omitted).

Although the court determined the statements possessed a guarantee of

trustworthiness, it found no facts to support such a conclusion. Accordingly, we hold

the court erred in admitting the statement under the residual exception in Rule

804(b)(5). See Swindler, 339 N.C. at 474, 450 S.E.2d at 911 (“This conclusion alone

is an inadequate determination that a statement contains the ‘equivalent

circumstantial guarantees of trustworthiness’ necessary to allow its admission under

the residual hearsay rule.”).

 Nonetheless, upon our own review of the record, we conclude there are

sufficient guarantees of trustworthiness. First, Rose possessed personal knowledge

of the events. Second, Rose had no motivation to fabricate at the time of the

statements. Third, Rose never recounted the statements. And, fourth, Rose was

unavailable because of her lack of memory of the events. See State v. Pretty, 134 N.C.

App. 379, 386, 517 S.E.2d 677, 683 (1999); State v. Wagoner, 131 N.C. App. 285, 290,

506 S.E.2d 738, 741 (1998).

 Defendant alleges there is insufficient indicia of trustworthiness because the

court stated:

 - 23 -
 STATE V. BLANKENSHIP

 Opinion of the Court

 [t]his child, in the Court’s opinion, is not old enough to
 know the difference between reality and fantasy, which in
 my mind bolsters the fact that, and bolsters the
 trustworthiness of the statement.

Defendant concedes, and we note, the court stated this in relation to Bobbi’s

testimony, not Gabrielle’s or Keith’s.

 Defendant cites State v. Stutts, 105 N.C. App. 557, 414 S.E.2d 61 (1992). In

Stutts, our Court concluded the trial court erred in finding guarantees of

trustworthiness when also concluding the child victim was unavailable due to her

inability to discern truth from falsehood or the difference between reality and

imagination. Thus, we held “that finding a witness unavailable to testify because of

an inability to tell truth from fantasy prevents that witness’ out-of-court statements

from possessing guarantees of trustworthiness to be admissible at trial under the

residual exception set forth in Rule 804(b)(5).” Id. at 562-63, 414 S.E.2d at 64-65.

 The State cites State v. Holden, 106 N.C. App. 244, 416 S.E.2d 415 (1992). In

Holden, the child witness could not testify due to “fear and trepidation[.]” Id. at 252,

416 S.E.2d at 420. During voir dire, the court stated the child witness “did not

understand the consequences of not telling the truth[.]” Id. at 252, 416 S.E.2d at 420.

Similar to Defendant here, the defendant argued the court’s statement showed

untrustworthiness of the statements and Stutts require reversal. First, our Court

noted Stutts applied Rule 803(24), not Rule 804(b)(5), and held Stutts did not control

 - 24 -
 STATE V. BLANKENSHIP

 Opinion of the Court

the case, because the child witness was not unavailable due to an inability to

distinguish truth from fantasy. Id. at 252, 416 S.E.2d at 420.

 We conclude the case sub judice is more analogous to Holden than to Stutts.

The court determined, and the parties stipulated to the determination, Rose was

unavailable due to lack of memory, not due to an inability to distinguish truth from

fantasy. While the court made a statement regarding Rose’s inability to know the

difference between reality and fantasy during the suppression hearing, as in Holden,

the statement “is not sufficient to overcome the circumstantial indicia of reliability[.]”

Id. at 252, 416 S.E.2d at 420.

 Additionally, Defendant suffered no prejudice from the court failing to

explicitly state none of the other Rule 804(b) exceptions applied. See Moore, 87 N.C.

App. at 158, 360 S.E.2d at 295. Accordingly, we conclude the statements have

sufficient guarantees of trustworthiness and the court did not err in admitting the

statements under Rule 804(b)(5).

 In conclusion, we conclude the court erred in admitting the statements under

Rules 803(1) and 803(2). However, Defendant failed to demonstrate reversible error

because the trial court properly admitted the statements under Rule 804(b)(5).

 ii. Rose’s Statement to Opdike

 Defendant next contends Opdike’s testimony about Rose telling her “Daddy

put his weiner in my coochie and it bleed” was inadmissible hearsay. At the

 - 25 -
 STATE V. BLANKENSHIP

 Opinion of the Court

suppression hearing, the court admitted Rose’s statements to Opdike under the

residual exception of Rule 804(b)(5) and stated:

 The second statement that the State wishes to admit is the
 statement of the -- is the interview with Adrienne Opdike,
 and I’ll also find that that statement is admissible in this
 case. It is -- it does fall within an exception to the hearsay
 rule, namely 804(b)(5), that for the same reasoning and
 under the same grounds as previously determined with
 regard to the statement made to Gabrielle and Keith
 Blankenship.

Defendant objected to the testimony at trial, and, thus, we review the admission

under the residual exception for abuse of discretion. As above, we conclude the

statement has sufficient guarantees of trustworthiness, and the court did not abuse

its discretion by admitting the statement under Rule 804(b)(5).

 iii. Rose’s Statements to Bobbi Christopher

 Defendant argues Rose’s statements to Bobbi were inadmissible hearsay. At

the suppression hearing, the court concluded the statements were admissible under

Rule 803(1) (Present Sense Impression), Rule 803(3) (Statement of the Then Existing

Mental, Emotional, or Physical Condition), and the residual exception of Rule

804(b)(5). At trial, Defendant initially objected when the State asked Bobbi about

what Rose said during a diaper change. However, Defendant failed to renew his

objection when Bobbi testified about other times Rose made the same statement to

her. Thus, we review any alleged errors of admission under Rule 803(1) or Rule

803(3) for plain error . State v. Campbell, 296 N.C. 394, 399, 250 S.E.2d 228, 231

 - 26 -
 STATE V. BLANKENSHIP

 Opinion of the Court

(1979) (citations omitted) (“It is well established that admission of evidence without

objection waives prior or subsequent objection to the admission of evidence of a

similar character.”). With regard to the court’s admission of the statement under the

residual exception, Defendant failed to renew his objection at trial. As above,

although our Court does not typically apply plain error to issues falling within the

realm of the trial’s court discretion, we address the merits of Defendant’s argument

to ensure he received a fair trial.

 For the reasons stated above, the court erred in admitting the statements

under the present sense impression exception to the rule against hearsay.6 However,

the court did not err, or abuse its discretion, in admitting the statements under Rule

804(b)(5). We conclude the court adequately met the steps of Triplett and Rule

804(b)(5) and the statements have sufficient guarantees of trustworthiness. Thus,

although the court erred in admitting the statements as present sense impressions,

Defendant failed to demonstrate reversible error because the court properly admitted

the statements under Rule 804(b)(5).

 iv. Rose’s Statements to Mahaffey

 At trial, Defendant objected to Mahaffey’s testimony regarding Rose’s

statements to her. The court overruled Defendant’s objection. Thus, we review for

prejudicial error. Wilkerson, 363 N.C. at 415, 683 S.E.2d at 197.

 6 We need not address any argument regarding any alleged error for admission under Rule
803(3), as we determine the court properly admitted the statement under Rule 804(b)(5).

 - 27 -
 STATE V. BLANKENSHIP

 Opinion of the Court

 Rule 803(4) states:

 Statements for Purposes of Medical Diagnosis or
 Treatment.—Statements made for purposes of medical
 diagnosis or treatment and describing medical history, or
 past or present symptoms, pain, or sensations, or the
 inception of a general character of the cause or external
 source thereof insofar as reasonably pertinent to diagnosis
 or treatment.

N.C. R. Evid. 803(4). The rule “requires a two-part inquiry: (1) whether the

declarant’s statements were made for purposes of medical diagnosis or treatment;

and (2) whether the declarant’s statements were reasonably pertinent to diagnosis or

treatment.” State v. Hinnant, 351 N.C. 277, 284, 523 S.E.2d 663, 667 (2000) (citations

omitted).

 Our Supreme Court in Hinnant pointed out the difficulty
 in determining whether a declarant—especially a young
 child—understood the purpose of his or her statements,
 and set forth the general rule that the court “should
 consider all objective circumstances of record surrounding
 declarant’s statements in determining whether he or she
 possessed the requisite intent under Rule 803(4).” Some
 factors to consider in determining whether a child had the
 requisite intent are whether an adult explained to the child
 the need for treatment and the important of truthfulness;
 with whom and under what circumstances the declarant
 was speaking; the setting of the interview; and the nature
 of the questions.

State v. Bates, 140 N.C. App. 743, 745, 538 S.E.2d 597, 599 (2000) (internal citations

omitted). In reviewing the objective circumstances, the court must consider whether

“the child understood the role in order to trigger the motivation to provide truthful

 - 28 -
 STATE V. BLANKENSHIP

 Opinion of the Court

information.” Hinnant, 351 N.C. at 288, 523 S.E.2d at 670 (citation and quotation

marks omitted).

 At trial, the court reasoned:

 I’m going to find that the statements of the victim to this
 witness are non-testimonial and that they fall into the
 hearsay exception in that they were given for purposes of
 medical diagnosis.
 I’m trying to remember which one that is. It’s
 Number (4), 803(4), statements made for the purpose of a
 medical diagnosis or treatment and describing medical
 history, or past or present symptoms, pain or sensations or
 the inception or general character of the cause or external
 source thereof insofar as reasonably pertinent to diagnosis
 or treatment.

 Here, whether or not Rose had the intent required under Hinnant is a close

call. First, we note the young age of Rose factors into our analysis. See Smith, 315

N.C. at 84, 337 S.E.2d at 840. On the one hand, the record indicates Mahaffey, a

nurse, examined Rose in the emergency department of a hospital. Nothing indicates

Rose’s statements were in response to leading questions or a non-spontaneous

statement. Additionally, Rose made the statements prior to and during a medical

examination. Compare Hinnant, 351 N.C. at 290, 523 S.E.2d at 671 (holding the

803(4) exception did not apply when the interview took place after the initial medical

examination, in a “child-friendly” room, in a non-medical environment, and with a

series of leading questions), with In re Clapp, 137 N.C. App. 14, 21-22, 526 S.E.2d

689, 695 (2000) (concluding a statement fell within the Rule 803(4) exception when

 - 29 -
 STATE V. BLANKENSHIP

 Opinion of the Court

the child-victim made the statement in the hospital emergency room and after the

mother informed doctors of the alleged incident). See also State v. Burgess, 181 N.C.

App. 27, 35, 639 S.E.2d 68, 74 (2007). The setting shows an atmosphere of “medical

significance[.]” State v. Lewis, 172 N.C. App. 97, 104, 616 S.E.2d 1, 5 (2005).

 On the other hand, nothing in the record indicates Mahaffey impressed the

importance of truth telling to Rose. Additionally, Rose did not understand why she

was at the hospital, and Mahaffey did not make it clear to Rose she needed treatment.

See State v. Isenberg, 148 N.C. App. 29, 37-38, 557 S.E.2d 568, 573-74 (2001).

 However, we need not decide whether the court erred in admitting this

statement under Rule 803(4). Assuming arguendo the court erred in admitting the

statement under Rule 803(4), Defendant fails to show prejudicial error. Wilkerson,

363 N.C. at 415, 683 S.E.2d at 197. As stated above, the court properly admitted

substantially identical statements made by Rose to others. Thus, Defendant failed

to show “there is a reasonable possibility that, had the error in question not been

committed, a different result would have been reached[.]” N.C. Gen. Stat. § 15A-

1443(a). Accordingly, we hold Defendant failed to show any prejudicial, reversible

error.

B. Defendant’s Confession

 Defendant next contends the court erred in denying his motion to dismiss the

charges of statutory sexual offense and indecent liberties with a child because the

 - 30 -
 STATE V. BLANKENSHIP

 Opinion of the Court

State failed to prove the corpus delicti of the crimes. Specifically, Defendant contends

the State relied solely on his uncorroborated confession to law enforcement officers,

which is insufficient to establish guilt. We agree.

 Corpus delicti means “the body of the crime,” and typically describes “the

material substance on which a crime has been committed.” Black’s Law Dictionary

419-20 (10th ed. 2014). “It is well established in this jurisdiction that a naked,

uncorroborated, extrajudicial confession is not sufficient to support a criminal

conviction.” State v. Trexler, 316 N.C. 528, 531, 342 S.E.2d 878, 880 (1986).

 The State can satisfy the corpus delicti doctrine in one of two ways. First:

 [t]raditionally, our corpus delicti rule has required the
 State to present corroborative evidence, independent of the
 defendant’s confession, tending to show that (a) the injury
 or harm constituting the crime occurred and (b) this injury
 or harm was done in a criminal manner. This traditional
 approach requires that the independent evidence touch or
 concern the corpus delicti—literally, the body of the crime,
 such as the dead body in a murder case.

State v. Cox, 367 N.C. 147, 151, 749 S.E.2d 271, 275 (2013) (citations, quotation

marks, and alterations omitted). Second, the State may satisfy the doctrine under

the “trustworthiness” approach, adopted by our Supreme Court in State v. Parker,

315 N.C. 222, 337 S.E.2d 487 (1985). Under this approach, the focus is “on the

reliability of a defendant’s confession rather than independent evidence of the corpus

deliciti.” State v. Messer, ___ N.C. App. ___, ___, 806 S.E.2d 315, 322 (2017) (citations

and quotation marks omitted). Thus:

 - 31 -
 STATE V. BLANKENSHIP

 Opinion of the Court

 when the State relies upon the defendant’s confession to
 obtain a conviction, it is no longer necessary that there be
 independent proof tending to establish the corpus delicti of
 the crime charged if the accused’s confession is supported
 by substantial independent evidence tending to establish
 its trustworthiness, including facts that tend to show the
 defendant had the opportunity to commit the crime.

Parker, 315 N.C. at 236, 337 S.E.2d at 495. However, “when independent proof of

loss or injury is lacking, there must be strong corroboration of essential facts and

circumstances embraced in the defendant’s confession. Corroboration of insignificant

facts or those unrelated to the commission of the crime will not suffice.” Id. at 236,

337 S.E.2d at 495.

 The State cites State v. Sweat, 366 N.C. 79, 727 S.E.2d 691 (2012). In Sweat,

our Supreme Court analyzed defendant’s confession under the Parker formulation.

Id. at 85-86, 727 S.E.2d at 695-96. The Court considered the following factors: First,

defendant had “ample opportunity” to commit the crimes. Id. at 86, 727 S.E.2d at

696. Although opportunity, alone, is insufficient, the Court considered it relevant

evidence. Id. at 86, 727 S.E.2d at 696 (citations omitted). Second, defendant’s

confession “evidenced familiarity with corroborated details likely to be known only by

the perpetrator.” Id. at 86, 727 S.E.2d at 696. Specifically, defendant’s confession

matched the victim’s extrajudicial statements regarding the number of times

defendant assaulted the victim, whether the assault was vaginal or anal penetration,

and where and when the assaults occurred. Id. at 87, 727 S.E.2d at 696. Third, his

 - 32 -
 STATE V. BLANKENSHIP

 Opinion of the Court

confession fit within “his pattern of sexual misconduct” with the victim. Id. at 87,

727 S.E.2d at 696-97. Fourth, the victim’s statements corroborated defendant’s

confession. Id. at 87, 727 S.E.2d at 697.

 Here, the only substantive evidence is Defendant’s confession, and, thus, we

review under the Parker formulation. Therefore, the dispositive question is whether

Defendant’s confession “is supported by substantial independent evidence tending to

establish its trustworthiness, including facts that tend to show [he] had the

opportunity to commit the crime.” Parker, 315 N.C. at 236, 337 S.E.2d at 495.

 First, Defendant had “ample opportunity” to commit the crimes. Defendant,

Rose’s father, often spent time alone with Rose at their home. Defendant’s

opportunity corroborates “essential facts embodied in the confession.” Sweat, 366

N.C. at 86, 727 S.E.2d at 696. However, Defendant’s confession did not corroborate

any “details related to the crimes likely to be known only by the perpetrator.” Id. at

87, 727 S.E.2d at 696. Unlike in Sweat, Defendant’s confession does not match any

extrajudicial statements by Rose. Rose told others “Daddy put weiner in coochie.”

However, Defendant denied that allegation throughout his confession. Defendant

confessed to other inappropriate sexual acts, but did not confess to putting his

“weiner” in her “coochie.” Third, Defendant’s confession did not “fit within” a pattern

of sexual misconduct. In contrast to Sweat, neither Rose nor any witness at the trial

testified as to a pattern of misconduct by Defendant. Id. at 87, 727 S.E.2d at 696-97.

 - 33 -
 STATE V. BLANKENSHIP

 Opinion of the Court

Fourth, the confession was not corroborated by Rose’s extrajudicial statements. In

the interview, Defendant confessed to touching Rose inappropriately and watching

pornography with her, but Defendant did not confess to raping Rose.

 Upon a review of the rest of the record, we conclude the State failed to prove

“strong corroboration of essential facts and circumstances[.]” Parker, 315 N.C. at 236,

337 S.E.2d at 495. Notably, Defendant spoke of watching pornography with Rose,

but investigators did not find any pornography on Defendant’s computer. We

conclude the State failed to satisfy the corpus delicti rule.

 Next, we turn to whether, even without Defendant’s confession, the State

presented sufficient evidence Defendant was the perpetrator of the crimes. The State

does not address the three counts of sexual offense with a child by an adult offender.

However, the State asserts it presented sufficient evidence of all four counts of taking

indecent liberties with a child, even without Defendant’s confession. In support of

this argument, the State argues the jury could have found certain behaviors by

Defendant constituted indecent liberties, beyond the occasions mentioned in

Defendant’s confession.7 Nonetheless, at trial, the State relied on the instances

relayed in Defendant’s confession for the crimes. We conclude the State failed to

present sufficient evidence of the statutory sexual offense charges and the indecent

 7 Specifically, the State alleges the jury “could have found that having sexual intercourse in
front of the child . . . was an indecent liberty” or “having the child walk around with no bottoms
on . . . was for the purpose of sexual gratification.”

 - 34 -
 STATE V. BLANKENSHIP

 Opinion of the Court

liberties charges. Accordingly, the trial court erred in denying Defendant’s motion to

dismiss, and we reverse.

C. Ineffective Assistance of Counsel

 Alternatively, Defendant argues his trial counsel rendered ineffective

assistance of counsel by (1) failing to object to the court’s admission of hearsay at trial

and (2) failing to renew Defendant’s motion to dismiss.

 At the outset, we note defense counsel’s failure to renew the motion to dismiss

did not waive appellate review, because Defendant did not present evidence. See N.C.

R. App. P. 10(a)(3). However, with regard to counsel’s failure to object at trial, we

deem the cold record insufficient for direct review of Defendant’s claims. See State v.

Fair, 354 N.C. 131, 166, 557 S.E.2d 500, 524-25 (2001) (citation omitted).

Accordingly, we dismiss his ineffective assistance of counsel claims, without prejudice

to his right to file a motion for appropriate relief.

 IV. Conclusion

 For the foregoing reasons, we hold the court did not commit reversible error in

admitting hearsay statements. Consequently, we hold no error in Defendant’s

conviction for rape. However, we reverse the trial court’s denial of Defendant’s

motion to dismiss the three statutory sexual offense charges and four indecent

liberties with a child charges. We remand this matter for resentencing. Additionally,

 - 35 -
 STATE V. BLANKENSHIP

 Opinion of the Court

we dismiss, without prejudice to file a motion for appropriate relief, Defendant’s

ineffective assistance of counsel claim.

 NO REVERSIBLE ERROR IN PART; REVERSED IN PART; DISMISSED

 WITHOUT PREJUDICE IN PART; REMANDED FOR NEW SENTENCING.

 Judge ELMORE concurs.

 Judge DIETZ concurs in a separate opinion.

 - 36 -
 No. COA17-713 – State v. Blankenship

 DIETZ, Judge, concurring.

 I take issue with two portions of the majority opinion. First, although I concur

in the result of the majority’s hearsay analysis, I disagree with the reasoning. As the

majority acknowledges, our Supreme Court has held that plain error review does not

apply “to issues which fall within the realm of the trial court’s discretion.” State v.

Steen, 352 N.C. 227, 256, 536 S.E.2d 1, 18 (2000). But that does not mean—as the

majority holds—that this Court reviews those unpreserved arguments under the

ordinary abuse of discretion standard. Under Steen, if an issue is unpreserved and is

not subject to plain error review, that issue is “waived” and cannot be reviewed on

appeal at all. Id. Thus, these unpreserved hearsay issues should either be reviewed

for plain error or deemed waived—they should not be reviewed for abuse of discretion

as if they were properly preserved.

 Second, I am concerned by the application of the corpus delicti rule in this case.

As the constitutional protections against coerced and unreliable confessions have

strengthened, the justification for this common law principle has eroded. The rule

still serves an obvious purpose when there is nothing to corroborate the defendant’s

confession at all. Consider, for example, a defendant confessing to sexually abusing

his daughter when the daughter has no memory of the assault and there is no other

evidence that a crime occurred.

 Here, by contrast, the jury heard evidence that the victim repeatedly told

family members and others that “daddy put his weiner in my coochie.” Thus, the
 STATE V. BLANKENSHIP

 Dietz, J., concurring

defendant’s confession is far from the only evidence that a sex crime occurred in this

case. But, because of the victim’s young age, she could not provide more details of the

specific sex acts at the time and, by trial, she could not remember the incidents at all.

Thus, this seems like the sort of case in which the defendant’s confession is

sufficiently reliable to fill in the gaps in the victim’s memory without running afoul

of the corpus delicti rule.

 But our Supreme Court implicitly rejected this relaxed view of corpus delicti

in State v. Sweat, 366 N.C. 79, 82–83, 727 S.E.2d 691, 694 (2012). There, the ten-year-

old victim testified that the defendant engaged in vaginal and anal intercourse with

her. Id. at 87, 727 S.E.2d at 696. The defendant also confessed to four acts of fellatio

with the victim. Id. The Supreme Court held that the confession could support the

additional convictions only if there was “strong corroboration of essential facts and

circumstances embraced in the defendant’s confession.” Id. at 85, 727 S.E.2d at 695

(emphasis in original). That test was met in Sweat because the defendant “confessed

to details likely to be known only to the perpetrator,” the crimes to which the

defendant confessed “fit within the pattern of defendant’s other crimes,” and the

victim had described the incidents of fellatio “to third parties in extrajudicial

statements.” Id. at 85–86, 727 S.E.2d at 696.

 None of these factors are present here. Moreover, if the mere fact that the child

victim testified to other, different sexual acts with the defendant were enough

standing alone to overcome the corpus delicti rule, the Supreme Court in Sweat would

 2
 STATE V. BLANKENSHIP

 Dietz, J., concurring

not have engaged in a lengthy analysis of these other factors. Thus, I agree with the

majority that the corpus delicti rule requires that we vacate the statutory sexual

offense and indecent liberties convictions in this case. But I question whether the

Supreme Court intended this result when it decided Sweat.

 3