HUNTER, JR., Robert N., Judge.
*906 *104 Zachary Allen Blankenship ("Defendant") appeals following jury verdicts convicting him of rape of a child by an adult offender, four counts of taking indecent liberties with a child, and three counts of sexual offense with a child by an adult offender. Following the verdicts, the court sentenced Defendant to two consecutive terms of 300 to 420 months imprisonment and ordered Defendant to register as a sexual offender for the rest of his natural life. On appeal, Defendant contends the court erred in admitting hearsay statements and denying his motion to dismiss. In the alternative, Defendant argues his counsel rendered ineffective assistance of counsel. We hold the court did not err in admitting hearsay statements, but reverse the court's denial of Defendant's motion to dismiss the three counts of statutory sexual offense with a child by an adult offender and four counts of indecent liberties charges. We dismiss, without prejudice to his right to file a motion for appropriate relief, Defendant's ineffective assistance of counsel claim.
I. Factual and Procedural History
On 3 February 2014, a Catawba County Grand Jury indicted Defendant for one count of rape of a child, four counts of taking indecent liberties with a child, and three counts of sexual offense with a child. On 15 December 2016, the State filed a "Motion to Admit Hearsay Statements of the Victim into Evidence through Other Exceptions Clause 803 & 804[.]" (All capitalized in original). On 19 December 2016, Defendant filed his objection to the State's motion. Also on 19 December 2016, Defendant filed a motion to suppress his confession.
On 3 January 2017, the court held a hearing on Defendant's motion to suppress and the State's motion to admit hearsay statements. The State and Defendant stipulated to Rose's[1] unavailability for purposes of hearsay exceptions.
The State first called Defendant's mother, Gabrielle. On 30 November 2013, Gabrielle waited for Rose's mother, Tammy, to drop Rose off at *105 Gabrielle's home. Typically, Tammy dropped Rose off at 8:30 in the morning. However, that day, Tammy did not arrive at 8:30, so Gabrielle and her husband went to Tammy's workplace. Upon arriving, Tammy told them she ran late that morning, so Rose stayed home with Defendant. Tammy offered to call Defendant, but Gabrielle said not to, because she would run errands before picking up Rose.
Gabrielle and her husband, Keith, arrived at Defendant's home and knocked on the door. As Gabrielle slightly opened the door, Defendant "hollered no, wait a minute, wait a minute." Gabrielle shut the door, paused, grabbed the doorknob again, and Defendant again said, "wait a minute." Gabrielle told Defendant to hurry up. Defendant opened the door. Gabrielle saw Rose, who was wearing a t-shirt, but no bottoms. Gabrielle told Defendant he needed to stop "let[ting] her run around naked[,]" and Defendant explained he was potty training Rose. Gabrielle put a diaper on Rose, dressed Rose, and brought Rose to Keith's truck.
As Gabrielle placed Rose in the car seat, Rose said, "daddy put his weiner on my coochie." Gabrielle "was blown away" because she "never heard her say anything like that before." Gabrielle instructed Rose to "tell poppy what [she] just told nana." Rose "repeated the words exactly." Keith said, "I don't understand what a coochie is, and she pointed to her vagina." Keith wanted to confront Defendant, but Gabrielle told him they would "take care of this in another way." Gabrielle and Keith brought Rose to the emergency room.
On cross-examination, Gabrielle indicated she was not "concerned" about Rose's "physical *907 or mental condition" when she saw Rose at Defendant's home. Additionally, Rose did not "indicate any pain or suffering[.]" Rose "was normal" and not crying when she talked with Gabrielle.
The State next called Keith Blankenship, Defendant's father. Keith's testimony regarding the morning of 30 November 2013 matched Gabrielle's testimony. Keith described Rose as "act[ing] like [Rose]" that morning and as "[n]ormal."
The State called Adrienne Opdike, a former victim advocate at the Children's Advocacy and Protection Center.[2] Odpike interviewed Rose on 12 December 2013. In the interview, when asked about "boo-boo's", Rose said, "daddy put his weiner in my coochie and I bleed. I have blood." While Odpike did not say "it in [Rose's] verbatim language, ... [Rose] did say daddy, coochie, blood together. She repeated that several *106 times." Rose also mentioned something "coming out of the weiner" but could not elaborate.
The State next called Bobbi Christopher, Rose's second cousin's wife. Bobbi first met Rose in 2013, when Rose was two years old. While on vacation in November 2013, Bobbi received a text message from Tammy, asking if she and Rose could stay with Bobbi and her husband. Bobbi agreed to let them stay at her home.
In early December 2013, the first time Bobbi changed Rose's diaper, Rose "put her hand on her vagina and ... [said] daddy put his weinie in me coochie." Rose said this statement and "I bleed in my coochie" "every time" Bobbi changed Rose's diaper. Bobbi described the remarks as "[s]pontaneous."
In an oral ruling, the court admitted Rose's statements to Gabrielle and Keith under Rule 803(1) (Present Sense Impression), Rule 803(2) (Excited Utterance), and the residual exception of Rule 804(b)(5) of the North Carolina Rules of Evidence. The court also admitted Rose's statements to Opdike under the residual exception of Rule 804(b)(5). Lastly, the court admitted Rose's statement to Bobbi under Rule 803(1) (Present Sense Impression), Rule 803(3) (Statement of the Then Existing Mental, Emotional, or Physical Condition), and the residual exception of Rule 804(b)(5). In an order entered 6 January 2017, the court denied Defendant's motion to suppress his confession.[3]
On 20 February 2017, the court called Defendant's case for trial. The State first called Gabrielle. Gabrielle's testimony regarding 30 November 2013 matched her testimony at the 3 January 2017 hearing. Defendant did not object to any parts of the testimony regarding Rose's statements to Gabrielle.
The State next called Keith, whose testimony largely matched the testimony from the January hearing. Keith added when Gabrielle told Tammy about the allegations, Tammy "got very angry ... and started hollering that her husband is not a pervert[.]" Again, Defendant did not object to any of Keith's testimony about Rose's statements to him.
The State called Amy Walker Mahaffey, a registered nurse in the emergency room at Lake Norman Regional Medical Center. The State tendered Mahaffey as an expert in performing sexual assault exams. Before Mahaffey testified about what Gabrielle told her that Rose said, *107 Defendant objected. The court dismissed the jury, and the following discussion ensued:
THE COURT: ... And then the other argument that you had was what?
[DEFENSE COUNSEL]: No exceptions to the hearsay, particularly on those. You know, there is a medical diagnosis exception in this particular case, but-
THE COURT: So in regards to what the-what [Rose] Blankenship said to the grandparents in the car-and did I hear from Bobbi Christopher? I think I did.
[STATE]: You did, Your Honor.
THE COURT: And that is what she said to her in the house that day.
[STATE]: Yes.
*908 THE COURT: Okay.
[DEFENSE COUNSEL]: Which I'll renew my objection at this time knowing that it's been ruled on just for preservation.
The court admitted the statements, under Rule 803(4) of the North Carolina Rules of Evidence -statements made for the purpose of a medical diagnosis or treatment.
During the examination, Rose said, "daddy put his weiner in my coochie[.]" Mahaffey examined Rose's genitalia, and Rose told Mahaffey "nothing hurt." Upon review, "[t]here were no obvious signs of trauma, meaning that there had been no blunt force trauma to the area." However, lack of trauma did not mean Rose was not penetrated. Additionally, the exam and the lack of findings were consistent with what Rose reported to Mahaffey.
The State called Bobbi Christopher. Bobbi's testimony regarding how Rose came to live with her and Rose's comments during diaper changes matched her testimony at the January hearing. At the time of the trial, Rose lived with Bobbi's daughter and son-in-law.
The State next called Adrienne Opdike. The State tendered Opdike as an expert in forensic interviewing. Before testifying regarding what Rose told her in the interview, Defendant objected. Defense counsel "assert[ed] that objection as to everything Ms. Opdike says that [Rose]
*108 says" but would also object to three specific lines. As at the January hearing, Opdike testified Rose told her "daddy put his wiener in her coochie and she bleed." Rose could not answer "specific questions" about the incident, but kept "repeating that statement." Rose also stated, "weiner come out, weiner come out."
The State called Marcella McCombs with the Catawba County Sheriff's Office. In 2013, McCombs worked as a child sexual assault investigator. On 13 December 2013, McCombs executed two search warrants-one for Defendant's home and one for electronics in the home-and arrested Defendant. Investigators searched Defendant's electronics for pornographic material, but did not find any on Defendant's computer.
McCombs returned to the Sheriff's Office to interview Defendant. McCombs read Defendant his Miranda rights, and Defendant signed a form, waiving the rights. McCombs recorded the interview with Defendant, which was published to the jury.
In the beginning of the interview, Defendant denied watching pornography in the past two years or touching Rose inappropriately. However, Defendant told officers he and Tammy often had sex together while Rose laid in the bed. In several instances, they would "continue", even after Rose awoke. Additionally, sometimes Rose would climb on his back while he was having sex with Tammy.
Defendant admitted to watching pornography in front of Rose. Additionally, Rose witnessed Defendant ejaculate. Two weeks before the interview, Defendant watched pornography on his computer. Rose sat on a nearby couch while Defendant watched and masturbated.
Defendant would also put lotion on his fingers and "rub" Rose's vagina. He rubbed her "about three" times, all within the month prior to the interview. However, Defendant denied Rose's allegations of him putting his penis "in her coochie."
Another time, Defendant watched videos "of a sexual nature" on the computer. Rose "grabbed" and "squeezed" his penis. He thought she learned how to grab his penis from watching him masturbate.
The State called Tammy. On 30 November 2013, Tammy, Gabrielle, and Keith arranged for Tammy to bring Rose to her grandparents' on Tammy's way to work. However, Tammy woke up late and left Rose at home with Defendant. Gabrielle and Keith arrived at Tammy's work and discussed picking up Rose from Tammy and Defendant's home. Tammy asked if they wanted her to call Defendant, so he would be ready for *109 their arrival. Gabrielle and Keith "said that ... they weren't for sure if they were going to pick her up then[,]" so Tammy did not call Defendant.
Tammy got off work around 3:00 p.m. and called Gabrielle and Keith, who told her to come to their house to pick up Rose. When Tammy arrived at their home, Gabrielle told Tammy "something had happened and [she]
*909 wasn't going to like it[.]" Gabrielle and Keith told Tammy "[Defendant] had been reported as a risk to [Rose]." Tammy was in shock and "never thought [Defendant] to be a threat to [Rose]." Rose never made similar statements to Tammy about Defendant.
Tammy brought Rose back to her and Defendant's home. Tammy told Defendant of the allegation, "and he was a bit in shock[.]" Tammy and Rose left Defendant's home and stayed the night at their church. Tammy and Rose then moved in with Bobbi, but Tammy soon moved back in with Defendant.
The State next called Jennifer Owen, a supervisor with Catawba County Department of Social Services ("DSS"). In November 2013, Owen worked as a forensic investigator with DSS. On or about 2 December 2013, Owen met with Tammy and Rose, and Owen explained the allegations against Defendant to Tammy. Tammy "was upset about it. She was somewhat angry saying that she didn't believe it, that this was a waste of time, that [Defendant] loved [Rose] and that he was more protective of [Rose] than she was." Tammy told Owen how Rose walked in on Tammy and Defendant having sex. Upon seeing Rose, the two separated and covered themselves. Rose said "weiner in coochie" and repeated the statement several times
On 4 December 2013, a nurse at Children's Advocacy and Protection Center completed a forensic medical exam of Rose. During the exam, Rose "indicated there was blood in her coochie and it came from the bed" and said "mommy broke it[.]"
After the exam, Owen scheduled a forensic interview of Rose. When Owen told Tammy about Rose's statements in the interview,[4] Tammy "didn't agree. She didn't believe it. She continued to defend [Defendant] and state he would never do any of this and that [Rose] wasn't telling the truth and none of this had ever happened."
On 13 December 2013, McCombs called Owen and told her officers arrested Defendant and Defendant "confessed." Around 2 p.m., Owen *110 arrived at the Catawba County Detention Center. After receiving investigators' permission, Owen spoke with Defendant. Defendant told Owen:
he had not done anything and then he said that he had already told investigators everything that had happened.... He told me that he had touched [Rose]. He said that he sleeps naked with [Rose], that him and Tammy sleep together and [Rose] sleeps in the bed with them and that he sleeps naked. He told me that there were multiple times when he and Tammy had engaged in sexual intercourse and that [Rose] would usually wake up. Sometimes she would watch but there would be times that she would actually crawl on his back while they were having sex and that they would not always stop because he didn't want to stop.
Owen called Tammy and informed her of Defendant's statements. Tammy "argued [Defendant] did not confess" and asked to speak to Defendant, but Owen did not have such authority. Tammy told Owen that Rose made those statements because Rose saw them have sex in October. Tammy also stated Defendant's statements about Rose climbing on his back during sex were truthful. Additionally, Owen testified on 11 November 2013, Tammy told a social worker Rose had made a statement about her coochie, and Tammy scolded her and said "you're not supposed to say that until you're married." Throughout her conversations with Owen, Tammy changed her story.
Next, the State called Thad Scronce, a lieutenant with the Catawba County Sheriff's Office. In November and December 2013, Lt. Scronce worked as a supervisor in the Special Victim's Unit and supervised McCombs. On 13 December 2013, Lt. Scronce accompanied other investigators to Defendant's home, where they executed two warrants. Investigators searched Defendant's electronics for child pornography, but did not find any.
Lt. Scronce returned to the Sheriff's Office and joined McCombs to interview Defendant. The interview lasted approximately two hours and forty-five minutes. Defendant initially denied the allegations. However, McCombs and Lt. Scronce continued the interview *910 because Defendant changed his story and contradicted himself.
The State rested. Defendant moved to dismiss all the charges. The court denied Defendant's motion. Defendant did not present any evidence.
*111 The jury found Defendant guilty of rape of a child by an adult offender, four counts of taking indecent liberties with a child, and three counts of sexual offense with a child by an adult offender. The court sentenced Defendant to two consecutive terms of 300 to 420 months imprisonment and ordered Defendant to register as a sexual offender for the rest of his natural life. Defendant gave timely oral notice of appeal.
II. Standard of Review
A. Hearsay Statements
"The trial court's determination as to whether an out-of-court statement constitutes hearsay is reviewed de novo on appeal." State v. Castaneda , 215 N.C. App. 144, 147, 715 S.E.2d 290, 293 (2011) (citation omitted).
"[A] trial court's evidentiary ruling on a pretrial motion to suppress is not sufficient to preserve the issue of admissibility for appeal unless a defendant renews the objection during trial." State v. Gullette , --- N.C. App. ----, ----, 796 S.E.2d 396, 399 (2017) (citation, brackets, and quotation marks omitted). See State v. Oglesby , 361 N.C. 550, 554, 648 S.E.2d 819, 821 (2007). Where Defendant renewed his objection at trial, we review the erroneous admission of hearsay for prejudicial error. State v. Wilkerson , 363 N.C. 382, 420, 683 S.E.2d 174, 197 (2009) ; N.C. Gen. Stat. § 15A-1443(a) (2017). "A defendant is prejudiced by evidentiary error 'when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises.' " Id. at 415, 683 S.E.2d at 194 (quoting N.C. Gen. Stat. § 15A-1443(a) ).
However, where Defendant failed to object to the admissibility of certain hearsay statements, we review for plain error. N.C. R. App. P. 10(a)(4) (2017). Plain error arises when the error is "so basic, so prejudicial, so lacking in its elements that justice cannot have been done[.]" State v. Odom , 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quotation marks and citation omitted). "Under the plain error rule, defendant must convince this Court not only that there was error, but that absent the error, the jury probably would have reached a different result." State v. Jordan , 333 N.C. 431, 440, 426 S.E.2d 692, 697 (1993) (citation omitted).
However, a court's determination to admit a hearsay statement under the residual exception of Rule 804(b)(5) of the North Carolina Rules of Evidence is reviewed for abuse of discretion. State v. Brigman , 178 N.C. App. 78, 87, 632 S.E.2d 498, 504 (2006) (citation omitted). "Abuse of discretion results where the court's ruling is manifestly unsupported *112 by reason or is so arbitrary that it could not have been the result of a reasoned decision." State v. Hennis , 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988) (citation omitted).
Thus, regarding the hearsay statements, if the trial court admitted the statements under an exception other than the residual exception , we review for either plain error or prejudicial error, dependent upon whether Defendant objected at trial. We review admission under the residual exception for abuse of discretion.
B. Motion to Dismiss
Regarding Defendant's motion to dismiss for violation of the corpus delicti rule, "[t]his Court reviews the trial court's denial of a motion to dismiss de novo ." State v. Smith , 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007) (citation omitted). See also State v. Cox , 367 N.C. 147, 154-55, 749 S.E.2d 271, 277 (2013) (applying the same standard when analyzing the corpus delicti rule). "Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." State v. Fritsch , 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000) (citations and quotations omitted). "Substantial evidence is such relevant evidence as a *911 reasonable mind might accept as adequate to support a conclusion." State v. Smith , 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980) (citations omitted).
III. Analysis
On appeal, Defendant contends: (1) the court erred in admitting hearsay statements; (2) the State failed to sufficiently corroborate his confession, in violation of the corpus delicti rule; and (3) trial counsel rendered ineffective assistance of counsel. We address his arguments in turn.
A. Hearsay Statements
Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. R. Evid. 801(c) (2017). Unless excepted by statute or the North Carolina Rules of Evidence, hearsay is generally inadmissible. N.C. R. Evid. 802 (2017).
i. Rose's Statements to Her Grandparents, Gabrielle and Keith
At the 3 January 2017 pre-trial hearing, the court admitted Rose's statements to Gabrielle and Keith for the following reasons:
*113 I think based upon the evidence, based upon the fact that the defendant said that the victim made that statement and there's other corroborating evidence that the victim made that statement and that based upon the time consideration of when the victim said the last time he-when the defendant said the last time he committed any act of that nature with the alleged victim was two weeks ago and that this incident with Gabrielle and Keith Blankenship occurred almost exactly two weeks before that, that it does come in under a Present Sense Impression and an excited utterance.
I also believe that it would be admissible as substantive evidence pursuant to 804(b)(5), other exceptions. Specifically I find that based upon all the evidence that I've heard in this motion and in the previous one, that this statement has, in comparison with all of the hearsay exceptions, equivalent circumstantial guarantees of trustworthiness.
The statement is offered as evidence of a material fact. The statement is more probative and on point the witness offered than any other evidence which the proponent can procure through reasonable efforts, taking into consideration the fact that the defense has stipulated that the witness is unavailable, and I'll also find that the general purposes of the rules of evidence and the interest of justice will be served by the admission of the statement into evidence.
It also appears that the State has given sufficient and appropriate notice to defense of its intention to offer the statement and the particulars of it.
Although Defendant filed a motion to suppress these statements, he did not object to the testimony at trial. See State v. Ray , 364 N.C. 272, 277, 697 S.E.2d 319, 322 (2010). Thus, we review for plain error. N.C. R. App. 10(c)(4).
(1) Excited Utterance Exception
Rule 803(2) excepts excited utterances, which are "statement[s] relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." N.C. R. Evid. 803(2). "To qualify as an excited utterance, the statement must relate to '(1) a sufficiently startling experience suspending reflective thought and (2) be a spontaneous reaction, not one resulting from reflection or fabrication.' "
*114 State v. McLaughlin , 246 N.C. App. 306, 326, 786 S.E.2d 269, 283, disc. review denied , --- N.C. ----, 787 S.E.2d 29 (2016) (quoting State v. Maness , 321 N.C. 454, 459, 364 S.E.2d 349, 351 (1988) ). Traditionally, when determining spontaneity, courts looked at the time lapse between the event and statement; however, " 'the modern trend is to consider whether the delay in making the statement provided an opportunity to manufacture or fabricate the statement.' " Id. at 325, 786 S.E.2d at 283 (quoting State v. Smith , 315 N.C. 76, 87, 337 S.E.2d 833, 841 (1985) ).
Here, the State correctly asserts the delay between Defendant's acts and Rose's statements *912 to Gabrielle and Keith does not bar admission of the statements as excited utterances. However, the State presented insufficient evidence to establish "the declarant was under the stress" of a startling event. N.C. R. Evid. 803(2). See also McLaughlin , 246 N.C. App. at 325, 786 S.E.2d at 284 (citation omitted). Stress is one of the crucial factors in this hearsay exception, and the State presented no evidence of Rose's stress. See Smith , 315 N.C. at 88, 337 S.E.2d at 842 (stating spontaneity and stress are the crucial factors). Thus, while spontaneity does not preclude the statements from being excited utterances, the absence of stress does.
The State cites to McLaughlin in support of its contention the statement is an excited utterance. However, in McLaughlin , our Court specifically discussed the declarant's stress while making statements to his mother. There, the declarant "came into the house 'frantically' and was 'shaking' while telling [his mother about the abuse.]" McLaughlin , 246 N.C. App. at 325, 786 S.E.2d at 283 ; see also Smith , 315 N.C. at 88, 337 S.E.2d at 842 (concluding a statement by a victim was an excited utterance when the child was afraid and scared when relating the incident). In contrast, both Gabrielle and Keith described Rose as "normal" and "happy" when making the statements. As such, the trial court erred in admitting the statements as excited utterances.
(2) Present Sense Impression Exception
Rule 803(1) excepts from the rule against hearsay a present sense impression, which is "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." N.C. R. Evid. 803(1) (2017). "The basis of the present sense impression exception is that closeness in time between the event and the declarant's statement reduces the likelihood of deliberate or conscious misrepresentation." State v. Pickens , 346 N.C. 628, 644, 488 S.E.2d 162, 171 (1997) (citation omitted). "There is no rigid rule about how long is too long to be 'immediately thereafter.' "
*115 State v. Clark , 128 N.C. App. 722, 725, 496 S.E.2d 604, 606 (1998) (citing State v. Cummings , 326 N.C. 298, 314, 389 S.E.2d 66, 75 (1990) ).
In its brief, the State argues "[t]he circumstances indicated that defendant likely was in the process of sexually abusing the victim when the Blankenships arrived at this residence, and defendant confessed to repeatedly abusing her over the previous month." However, at trial, the State argued:
The State did not allege the 30th as being the day when he actually had sex with the child. We allege the full month. The reason why we allege that full month for all these charges is because the defendant indicated that that was the time in which he was doing inappropriate things with his daughter.
He did admit the last time he did something inappropriate, in the interview, was two weeks prior which would be that 30th. But the State's not saying that on that 30th that that was the exact day that he actually used his penis to penetrate her or his finger to penetrate her. The defendant didn't make clear what exactly he did to her on that particular day.
During his confession, Defendant admitted he watched pornography two weeks before. While admitting he touching Rose "about three times[,]" he said all three times occurred in the month prior.
The record lacks evidence of exactly when the sexual misconduct occurred, and, thus, we cannot conclude the trial court properly admitted the statements as present sense impressions. See Smith , 315 N.C. at 89, 337 S.E.2d at 842-43 (citation omitted) (noting leniency in the timing of the excited utterance hearsay exception is inapplicable when there is no evidence of exactly when the misconduct occurred). See also State v. Hoxit , No. COA14-439, 2014 WL 7472946, at *4-*5 (unpublished) (N.C. Ct. App. Dec. 31, 2014) (applying Smith to the present sense impression exception and holding a statement was not a present sense impression because there was no evidence the alleged misconduct occurred immediately before the declarant made the statements). Accordingly, here, the trial court erred in admitting the statement as a present sense impression.
*913 (3) Residual Exception
Finally, Rule 804(b)(5) excepts from the rule against hearsay certain statements "having equivalent circumstantial guarantees of *116 trustworthiness[.]"[5] N.C. R. Evid. 804(b)(5). In State v. Triplett , the Supreme Court adopted a six-part test for admitting statements under the residual exception in Rule 804(b)(5) : (1) has proper notice been given; (2) is the hearsay covered by any of the exceptions listed in Rule 804(b)(1)-(4); (3) is the hearsay statement trustworthy; (4) is the statement material; (5) is the statement more probative on the issue than any other evidence which the proponent can procure through reasonable efforts; and (6) will the interests of justice be best served by admission. 316 N.C. 1, 9, 340 S.E.2d 736, 741 (1986).
When determining trustworthiness, the court should consider: "(1) the declarant's personal knowledge of the underlying event; (2) the declarant's motivation to speak the truth; (3) whether the declarant recanted; and (4) the reason, within the meaning of Rule 804(a), for the declarant's unavailability." State v. Nichols , 321 N.C. 616, 624, 365 S.E.2d 561, 566 (1988) (citations omitted). If the court fails to make the proper findings to establish the trustworthiness of a statement, the appellate courts can "review the record and make our own determination." State v. Valentine , 357 N.C. 512, 518, 591 S.E.2d 846, 853 (2003). See also State v. Daughtry , 340 N.C. 488,514, 459 S.E.2d 747, 760 (1995), cert. denied , 516 U.S. 1079, 116 S.Ct. 789, 133 L.Ed.2d 739 (1996) ; State v. Swindler , 339 N.C. 469, 474-75, 450 S.E.2d 907, 911 (1994), disapproved of on other grounds , State v. Jackson , 348 N.C. 644, 653, 503 S.E.2d 101, 106-07 (1998).
At the suppression hearing, the court concluded:
I also believe that it would be admissible as substantive evidence pursuant to 804(b)(5), other exceptions. Specifically I find that based upon all the evidence that I've heard in this motion and in the previous one, that this statement has, in comparison with all of the hearsay exceptions, equivalent circumstantial guarantees of trustworthiness.
The statement is offered as evidence of a material fact. The statement is more probative and on point the *117 witness offered than any other evidence which the proponent can procure through reasonable efforts, taking into consideration the fact that the defense has stipulated that the witness is unavailable, and I'll also find that the general purposes of the rules of evidence and the interest of justice will be served by the admission of the statement into evidence.
It also appears that the State has given sufficient and appropriate notice to defense of its intention to offer the statement and the particulars of it.
The court engaged in steps one and four through six. However, the court did not determine whether the statement fits within any of the Rule 804(b)(1)-(4) exceptions. While we note the State did not argue for admission under another Rule 804(b) exception, we must conclude the court erred in failing to enter its conclusion in the record of whether the statement was admissible under another exception. See State v. Moore , 87 N.C. App. 156, 158, 360 S.E.2d 293, 295 (1987).
Additionally, the court failed, in compliance with the requirement for step three, to "include in the record his findings of fact and conclusions of law that the statement possesses equivalent circumstantial guarantee of trustworthiness." Triplett , 316 N.C. at 9, 340 S.E.2d at 741 (citation and quotation marks omitted). Although the court determined the statements possessed a guarantee of trustworthiness, *914 it found no facts to support such a conclusion. Accordingly, we hold the court erred in admitting the statement under the residual exception in Rule 804(b)(5). See Swindler , 339 N.C. at 474, 450 S.E.2d at 911 ("This conclusion alone is an inadequate determination that a statement contains the 'equivalent circumstantial guarantees of trustworthiness' necessary to allow its admission under the residual hearsay rule.").
Nonetheless, upon our own review of the record, we conclude there are sufficient guarantees of trustworthiness. First, Rose possessed personal knowledge of the events. Second, Rose had no motivation to fabricate at the time of the statements. Third, Rose never recounted the statements. And, fourth, Rose was unavailable because of her lack of memory of the events. See State v. Pretty , 134 N.C. App. 379, 386, 517 S.E.2d 677, 683 (1999) ; State v. Wagoner , 131 N.C. App. 285, 290, 506 S.E.2d 738, 741 (1998).
Defendant alleges there is insufficient indicia of trustworthiness because the court stated:
*118 [t]his child, in the Court's opinion, is not old enough to know the difference between reality and fantasy, which in my mind bolsters the fact that, and bolsters the trustworthiness of the statement.
Defendant concedes, and we note, the court stated this in relation to Bobbi's testimony, not Gabrielle's or Keith's.
Defendant cites State v. Stutts , 105 N.C. App. 557, 414 S.E.2d 61 (1992). In Stutts , our Court concluded the trial court erred in finding guarantees of trustworthiness when also concluding the child victim was unavailable due to her inability to discern truth from falsehood or the difference between reality and imagination. Thus, we held "that finding a witness unavailable to testify because of an inability to tell truth from fantasy prevents that witness' out-of-court statements from possessing guarantees of trustworthiness to be admissible at trial under the residual exception set forth in Rule 804(b)(5)." Id. at 562-63, 414 S.E.2d at 64-65.
The State cites State v. Holden , 106 N.C. App. 244, 416 S.E.2d 415 (1992). In Holden , the child witness could not testify due to "fear and trepidation[.]" Id. at 252, 416 S.E.2d at 420. During voir dire , the court stated the child witness "did not understand the consequences of not telling the truth[.]" Id. at 252, 416 S.E.2d at 420. Similar to Defendant here, the defendant argued the court's statement showed untrustworthiness of the statements and Stutts require reversal. First, our Court noted Stutts applied Rule 803(24), not Rule 804(b)(5), and held Stutts did not control the case, because the child witness was not unavailable due to an inability to distinguish truth from fantasy. Id. at 252, 416 S.E.2d at 420.
We conclude the case sub judice is more analogous to Holden than to Stutts . The court determined, and the parties stipulated to the determination, Rose was unavailable due to lack of memory, not due to an inability to distinguish truth from fantasy. While the court made a statement regarding Rose's inability to know the difference between reality and fantasy during the suppression hearing, as in Holden , the statement "is not sufficient to overcome the circumstantial indicia of reliability[.]" Id. at 252, 416 S.E.2d at 420.
Additionally, Defendant suffered no prejudice from the court failing to explicitly state none of the other Rule 804(b) exceptions applied. See Moore , 87 N.C. App. at 158, 360 S.E.2d at 295. Accordingly, we conclude the statements have sufficient guarantees of trustworthiness and the court did not err in admitting the statements under Rule 804(b)(5).
*119 In conclusion, we conclude the court erred in admitting the statements under Rules 803(1) and 803(2). However, Defendant failed to demonstrate reversible error because the trial court properly admitted the statements under Rule 804(b)(5).
ii. Rose's Statement to Opdike
Defendant next contends Opdike's testimony about Rose telling her "Daddy put his weiner in my coochie and it bleed" was inadmissible hearsay. At the suppression hearing, the court admitted Rose's statements to Opdike under the residual exception of Rule 804(b)(5) and stated:
*915 The second statement that the State wishes to admit is the statement of the-is the interview with Adrienne Opdike, and I'll also find that that statement is admissible in this case. It is-it does fall within an exception to the hearsay rule, namely 804(b)(5), that for the same reasoning and under the same grounds as previously determined with regard to the statement made to Gabrielle and Keith Blankenship.
Defendant objected to the testimony at trial, and, thus, we review the admission under the residual exception for abuse of discretion. As above, we conclude the statement has sufficient guarantees of trustworthiness, and the court did not abuse its discretion by admitting the statement under Rule 804(b)(5).
iii. Rose's Statements to Bobbi Christopher
Defendant argues Rose's statements to Bobbi were inadmissible hearsay. At the suppression hearing, the court concluded the statements were admissible under Rule 803(1) (Present Sense Impression), Rule 803(3) (Statement of the Then Existing Mental, Emotional, or Physical Condition), and the residual exception of Rule 804(b)(5). At trial, Defendant initially objected when the State asked Bobbi about what Rose said during a diaper change. However, Defendant failed to renew his objection when Bobbi testified about other times Rose made the same statement to her. Thus, we review any alleged errors of admission under Rule 803(1) or Rule 803(3) for plain error. State v. Campbell , 296 N.C. 394, 399, 250 S.E.2d 228, 231 (1979) (citations omitted) ("It is well established that admission of evidence without objection waives prior or subsequent objection to the admission of evidence of a similar character."). With regard to the court's admission of the statement under the residual exception, Defendant failed to renew his objection at trial. As above, although our Court does not typically apply plain error to issues *120 falling within the realm of the trial's court discretion, we address the merits of Defendant's argument to ensure he received a fair trial.
For the reasons stated above, the court erred in admitting the statements under the present sense impression exception to the rule against hearsay.[6] However, the court did not err, or abuse its discretion, in admitting the statements under Rule 804(b)(5). We conclude the court adequately met the steps of Triplett and Rule 804(b)(5) and the statements have sufficient guarantees of trustworthiness. Thus, although the court erred in admitting the statements as present sense impressions, Defendant failed to demonstrate reversible error because the court properly admitted the statements under Rule 804(b)(5).
iv. Rose's Statements to Mahaffey
At trial, Defendant objected to Mahaffey's testimony regarding Rose's statements to her. The court overruled Defendant's objection. Thus, we review for prejudicial error. Wilkerson , 363 N.C. at 415, 683 S.E.2d at 197.
Rule 803(4) states:
Statements for Purposes of Medical Diagnosis or Treatment.-Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception of a general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.
N.C. R. Evid. 803(4). The rule "requires a two-part inquiry: (1) whether the declarant's statements were made for purposes of medical diagnosis or treatment; and (2) whether the declarant's statements were reasonably pertinent to diagnosis or treatment." State v. Hinnant , 351 N.C. 277, 284, 523 S.E.2d 663, 667 (2000) (citations omitted).
Our Supreme Court in Hinnant pointed out the difficulty in determining whether a declarant-especially a young child-understood the purpose of his or her statements, and set forth the general rule that the court "should consider all objective circumstances of record surrounding declarant's statements in determining whether *916 he or she *121 possessed the requisite intent under Rule 803(4)." Some factors to consider in determining whether a child had the requisite intent are whether an adult explained to the child the need for treatment and the important of truthfulness; with whom and under what circumstances the declarant was speaking; the setting of the interview; and the nature of the questions.
State v. Bates , 140 N.C. App. 743, 745, 538 S.E.2d 597, 599 (2000) (internal citations omitted). In reviewing the objective circumstances, the court must consider whether "the child understood the role in order to trigger the motivation to provide truthful information." Hinnant , 351 N.C. at 288, 523 S.E.2d at 670 (citation and quotation marks omitted).
At trial, the court reasoned:
I'm going to find that the statements of the victim to this witness are non-testimonial and that they fall into the hearsay exception in that they were given for purposes of medical diagnosis.
I'm trying to remember which one that is. It's Number (4), 803(4), statements made for the purpose of a medical diagnosis or treatment and describing medical history, or past or present symptoms, pain or sensations or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.
Here, whether or not Rose had the intent required under Hinnant is a close call. First, we note the young age of Rose factors into our analysis. See Smith , 315 N.C. at 84, 337 S.E.2d at 840. On the one hand, the record indicates Mahaffey, a nurse, examined Rose in the emergency department of a hospital. Nothing indicates Rose's statements were in response to leading questions or a non-spontaneous statement. Additionally, Rose made the statements prior to and during a medical examination. Compare Hinnant , 351 N.C. at 290, 523 S.E.2d at 671 (holding the 803(4) exception did not apply when the interview took place after the initial medical examination, in a "child-friendly" room, in a non-medical environment, and with a series of leading questions), with In re Clapp , 137 N.C. App. 14, 21-22, 526 S.E.2d 689, 695 (2000) (concluding a statement fell within the Rule 803(4) exception when the child-victim made the statement in the hospital emergency room and after the mother informed doctors of the alleged incident). See also State v. Burgess , 181 N.C. App. 27, 35, 639 S.E.2d 68, 74 (2007). The *122 setting shows an atmosphere of "medical significance[.]" State v. Lewis , 172 N.C. App. 97, 104, 616 S.E.2d 1, 5 (2005).
On the other hand, nothing in the record indicates Mahaffey impressed the importance of truth telling to Rose. Additionally, Rose did not understand why she was at the hospital, and Mahaffey did not make it clear to Rose she needed treatment. See State v. Isenberg , 148 N.C. App. 29, 37-38, 557 S.E.2d 568, 573-74 (2001).
However, we need not decide whether the court erred in admitting this statement under Rule 803(4). Assuming arguendo the court erred in admitting the statement under Rule 803(4), Defendant fails to show prejudicial error. Wilkerson , 363 N.C. at 415, 683 S.E.2d at 197. As stated above, the court properly admitted substantially identical statements made by Rose to others. Thus, Defendant failed to show "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached[.]" N.C. Gen. Stat. § 15A-1443(a). Accordingly, we hold Defendant failed to show any prejudicial, reversible error.
B. Defendant's Confession
Defendant next contends the court erred in denying his motion to dismiss the charges of statutory sexual offense and indecent liberties with a child because the State failed to prove the corpus delicti of the crimes. Specifically, Defendant contends the State relied solely on his uncorroborated confession to law enforcement officers, which is insufficient to establish guilt. We agree.
Corpus delicti means "the body of the crime," and typically describes "the material substance on which a crime has been committed." Black's Law Dictionary 419-20 (10th ed. 2014). "It is well established in this jurisdiction that a naked, uncorroborated, *917 extrajudicial confession is not sufficient to support a criminal conviction." State v. Trexler , 316 N.C. 528, 531, 342 S.E.2d 878, 880 (1986).
The State can satisfy the corpus delicti doctrine in one of two ways. First:
[t]raditionally, our corpus delicti rule has required the State to present corroborative evidence, independent of the defendant's confession, tending to show that (a) the injury or harm constituting the crime occurred and (b) this injury or harm was done in a criminal manner. This traditional approach requires that the independent evidence touch or concern the corpus delicti -literally, the body of the crime, such as the dead body in a murder case.
*123 State v. Cox , 367 N.C. 147, 151, 749 S.E.2d 271, 275 (2013) (citations, quotation marks, and alterations omitted). Second, the State may satisfy the doctrine under the "trustworthiness" approach, adopted by our Supreme Court in State v. Parker , 315 N.C. 222, 337 S.E.2d 487 (1985). Under this approach, the focus is "on the reliability of a defendant's confession rather than independent evidence of the corpus deliciti ." State v. Messer , --- N.C. App. ----, ----, 806 S.E.2d 315, 322 (2017) (citations and quotation marks omitted). Thus:
when the State relies upon the defendant's confession to obtain a conviction, it is no longer necessary that there be independent proof tending to establish the corpus delicti of the crime charged if the accused's confession is supported by substantial independent evidence tending to establish its trustworthiness, including facts that tend to show the defendant had the opportunity to commit the crime.
Parker , 315 N.C. at 236, 337 S.E.2d at 495. However, "when independent proof of loss or injury is lacking, there must be strong corroboration of essential facts and circumstances embraced in the defendant's confession. Corroboration of insignificant facts or those unrelated to the commission of the crime will not suffice." Id. at 236, 337 S.E.2d at 495.
The State cites State v. Sweat , 366 N.C. 79, 727 S.E.2d 691 (2012). In Sweat , our Supreme Court analyzed defendant's confession under the Parker formulation. Id. at 85-86, 727 S.E.2d at 695-96. The Court considered the following factors: First, defendant had "ample opportunity" to commit the crimes. Id. at 86, 727 S.E.2d at 696. Although opportunity, alone, is insufficient, the Court considered it relevant evidence. Id. at 86, 727 S.E.2d at 696 (citations omitted). Second, defendant's confession "evidenced familiarity with corroborated details likely to be known only by the perpetrator." Id. at 86, 727 S.E.2d at 696. Specifically, defendant's confession matched the victim's extrajudicial statements regarding the number of times defendant assaulted the victim, whether the assault was vaginal or anal penetration, and where and when the assaults occurred. Id. at 87, 727 S.E.2d at 696. Third, his confession fit within "his pattern of sexual misconduct" with the victim. Id. at 87, 727 S.E.2d at 696-97. Fourth, the victim's statements corroborated defendant's confession. Id. at 87, 727 S.E.2d at 697.
Here, the only substantive evidence is Defendant's confession, and, thus, we review under the Parker formulation. Therefore, the dispositive question is whether Defendant's confession "is supported by substantial *124 independent evidence tending to establish its trustworthiness, including facts that tend to show [he] had the opportunity to commit the crime." Parker , 315 N.C. at 236, 337 S.E.2d at 495.
First, Defendant had "ample opportunity" to commit the crimes. Defendant, Rose's father, often spent time alone with Rose at their home. Defendant's opportunity corroborates "essential facts embodied in the confession." Sweat , 366 N.C. at 86, 727 S.E.2d at 696. However, Defendant's confession did not corroborate any "details related to the crimes likely to be known only by the perpetrator." Id. at 87, 727 S.E.2d at 696. Unlike in Sweat , Defendant's confession does not match any extrajudicial statements by Rose. Rose told others "Daddy put weiner in coochie." However, Defendant denied that allegation throughout his confession. Defendant confessed to other inappropriate sexual acts, but did not confess to putting his "weiner" in her "coochie." Third, Defendant's *918 confession did not "fit within" a pattern of sexual misconduct. In contrast to Sweat , neither Rose nor any witness at the trial testified as to a pattern of misconduct by Defendant. Id. at 87, 727 S.E.2d at 696-97. Fourth, the confession was not corroborated by Rose's extrajudicial statements. In the interview, Defendant confessed to touching Rose inappropriately and watching pornography with her, but Defendant did not confess to raping Rose.
Upon a review of the rest of the record, we conclude the State failed to prove "strong corroboration of essential facts and circumstances[.]" Parker , 315 N.C. at 236, 337 S.E.2d at 495. Notably, Defendant spoke of watching pornography with Rose, but investigators did not find any pornography on Defendant's computer. We conclude the State failed to satisfy the corpus delicti rule.
Next, we turn to whether, even without Defendant's confession, the State presented sufficient evidence Defendant was the perpetrator of the crimes. The State does not address the three counts of sexual offense with a child by an adult offender. However, the State asserts it presented sufficient evidence of all four counts of taking indecent liberties with a child, even without Defendant's confession. In support of this argument, the State argues the jury could have found certain behaviors by Defendant constituted indecent liberties, beyond the occasions mentioned in Defendant's confession.[7] Nonetheless, at trial, the State relied on the instances relayed in Defendant's confession for the crimes. We *125 conclude the State failed to present sufficient evidence of the statutory sexual offense charges and the indecent liberties charges. Accordingly, the trial court erred in denying Defendant's motion to dismiss, and we reverse.
C. Ineffective Assistance of Counsel
Alternatively, Defendant argues his trial counsel rendered ineffective assistance of counsel by (1) failing to object to the court's admission of hearsay at trial and (2) failing to renew Defendant's motion to dismiss.
At the outset, we note defense counsel's failure to renew the motion to dismiss did not waive appellate review, because Defendant did not present evidence. See N.C. R. App. P. 10(a)(3). However, with regard to counsel's failure to object at trial, we deem the cold record insufficient for direct review of Defendant's claims. See State v. Fair , 354 N.C. 131, 166, 557 S.E.2d 500, 524-25 (2001) (citation omitted). Accordingly, we dismiss his ineffective assistance of counsel claims, without prejudice to his right to file a motion for appropriate relief.
IV. Conclusion
For the foregoing reasons, we hold the court did not commit reversible error in admitting hearsay statements. Consequently, we hold no error in Defendant's conviction for rape. However, we reverse the trial court's denial of Defendant's motion to dismiss the three statutory sexual offense charges and four indecent liberties with a child charges. We remand this matter for resentencing. Additionally, we dismiss, without prejudice to file a motion for appropriate relief, Defendant's ineffective assistance of counsel claim.
NO REVERSIBLE ERROR IN PART; REVERSED IN PART; DISMISSED WITHOUT PREJUDICE IN PART; REMANDED FOR NEW SENTENCING.
Judge ELMORE concurs.
Judge DIETZ concurs in a separate opinion.

We use this pseudonym to protect the identity of the juvenile and for ease of reading. N.C. R. App. P. 3.1 (2017).

At the time of the hearing, Opdike was the director of the Children's Advocacy and Protection Center.

Defendant does not present any appellate arguments regarding whether his confession was voluntary.

Owen did not testify, specifically, about the statements Rose made in the forensic interview.

As stated supra , we review the Court's determination under the residual exception for abuse of discretion. However, our Supreme Court held that discretionary decisions of the trial court are not subject to plain error review. State v. Steen , 352 N.C. 227, 256, 536 S.E.2d 1, 18 (2000) (stating that the North Carolina Supreme Court "has not applied the plain error rule to issues which fall within the realm of the trial court's discretion"), cert. denied , 531 U.S. 1167, 121 S.Ct. 1131, 148 L.Ed.2d 997 (2001). See also State v. Norton , 213 N.C. App. 75, 81, 712 S.E.2d 387, 391 (2011). Nevertheless, as our Court did in Norton , "in the interest of ensuring that [Defendant] had a fair trial, we address the merits of [his] argument." Id. at 81, 712 S.E.2d at 391.

We need not address any argument regarding any alleged error for admission under Rule 803(3), as we determine the court properly admitted the statement under Rule 804(b)(5).

Specifically, the State alleges the jury "could have found that having sexual intercourse in front of the child ... was an indecent liberty" or "having the child walk around with no bottoms on ... was for the purpose of sexual gratification."