IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-1025

Filed: 1 December 2020

New Hanover County, Nos. 17 CRS 58737, 18 CRS 52053–54

STATE OF NORTH CAROLINA

    v.

ADELL GRADY

Appeal by defendant from judgments entered 7 March 2019 by Judge John E. Nobles Jr. in New Hanover County Superior Court. Heard in the Court of Appeals 8 September 2020.

> *Attorney General Joshua H. Stein, by Special Deputy Attorney General Colleen M. Crowley, for the State.*
>
> *Dunn, Pittman, Skinner & Cushman, PLLC, by Rudolph A. Ashton, III, for defendant.*

DIETZ, Judge.

Defendant Adell Grady appeals his convictions for felony breaking and entering, felony larceny, and possession of a firearm by a felon. He argues that the trial court erred by admitting the State's evidence that he committed another similar breaking and entering. Grady also argues that an officer's testimony about that other break-in involved inadmissible hearsay. Finally, Grady argues that there was insufficient evidence that he stole any guns during the break-in and thus the charge of possession of a firearm by a felon should have been dismissed.

We reject these arguments. The evidence of the other break-in, which took place on a neighboring street, at around the same time, on the same day, by someone with the same general features and dressed in the same clothes as the perpetrator of the charged offenses, was properly admitted under Rule 404(b) for various reasons other than solely to show Grady's propensity to commit those offenses.

Likewise, the officer's description of what the victim of that other break-in told him, just minutes after that break-in occurred, was admissible as a present sense impression. Finally, the State's evidence was sufficient to overcome a motion to dismiss the charge of possession of a firearm by a felon, even without any direct evidence that Grady stole the guns, based on the evidence that those guns were present in a locked house before the break-in, that they were missing afterward, and that Grady was the perpetrator of the break-in. We therefore find no error in the trial court's judgments.

**Facts and Procedural History**

In 2018, Officer Jesse Moore with the Wilmington Police Department responded to a report of a breaking and entering at a home on Fowler Street. When Moore arrived, he observed that the front door was kicked in. The resident of the home, Jason Gray, was not there.

Gray's next-door neighbors, the Overbys, had called 911. They were waiting outside for police to arrive. Ms. Overby reported that her husband had been across

the street feeding a neighbor's dog that morning when she heard a loud noise, looked outside, and saw a man walk across the corner of their driveway from the direction of Gray's house, and then walk east on Fowler Street toward a nearby apartment complex. Ms. Overby described the man as African-American, wearing a red and black hoodie, and carrying a Game Stop bag. Shortly after, Ms. Overby saw a gold car drive by several times making a loud noise.

As Mr. Overby was walking back from the neighbor's house, the gold car, a Dodge Neon, stopped in front of the Overbys' house. The driver asked Mr. Overby for directions. Mr. Overby described the driver as a black man with grayish hair and beard, probably in his 40s or 50s, and wearing a red and black hoodie. After the man drove off, Mr. Overby went to check on Gray's house, saw that the front door was kicked open, and told Ms. Overby to call the police.

Ms. Overby later checked their security system video footage, where she again saw the man with the red and black hoodie. The video captured the man walking next door toward Gray's home with nothing in his hands and then coming out across the front of the Overbys' house with a Game Stop bag in his hands. The Overbys testified that they couldn't see what was in the bag, but "you could tell by looking at it, it was kind of – stuck out on different sides or whatever and you could tell there was weight in the bag." The Overbys provided their surveillance footage to Officer Moore. Ms. Overby also viewed footage showing the man walking to the gold car parked at the

nearby apartment complex, getting in the car, and driving towards the Overbys' home. The Overbys were unable to provide that portion of the footage to police due to a system malfunction.

After Officer Moore notified Jason Gray, the home's resident, of the break-in, Gray returned home to find that his front door was broken open, the house had been ransacked, and many of his belongings were missing. The missing items included multiple electronic devices, video games and gaming consoles, and three firearms (two handguns and a shotgun). Gray testified that he had Game Stop bags in his residence at the time of the break-in.

On the same morning as the Fowler Street break-in, Officer William Rose investigated a breaking and entering at a house on Dexter Street, one street over from Fowler Street. Officer Rose arrived shortly before 10:20 a.m. As Officer Rose was approaching the Dexter Street house, the home's resident, James Smith, arrived and ran towards the backyard. Officer Rose followed him. Smith identified himself as the resident of the home and as "the person who had called 911 because of the house being broken into." Smith was "agitated," "excited," and "angry" and told Officer Rose that his house had just been broken into.

Smith showed Officer Rose a portion of a video that was automatically sent to his cell phone from his home's security camera, showing that there was someone inside the residence. The time stamp on the video was 10:17 a.m. After waiting for

other officers to arrive, Officer Rose entered the residence. There was property damage to the rear door frame of the residence where the surveillance video showed the suspect had entered. Officer Rose then asked Smith if anything was missing from the residence, and Smith told the officer that a television was missing.

Sergeant Brian Needham later reviewed security video footage from both Fowler Street and Dexter Street. Both videos showed a black man wearing a red and black hooded sweatshirt. The man could be seen entering the home on Dexter Street and carrying away a television. Upon comparing the videos, Sergeant Needham concluded that the same individual committed both the Dexter Street and Fowler Street break-ins. After locating the gold Dodge Neon from the Fowler Street surveillance footage and identifying its owner, Needham went on Facebook where he found a photo of the car's owner with a man who closely resembled the description given by the Overbys and the man in the security videos. Needham identified the man as Defendant Adell Grady and found a Facebook photo from the previous month showing Grady wearing a red and black hooded sweatshirt that was the same style of sweatshirt worn by the suspect in the surveillance videos.

Police then located Grady and arrested him. At the time of his arrest, Grady was wearing what officers believed to be the same red and black Nike hooded sweatshirt shown in the surveillance videos. Grady was charged with breaking and entering, larceny, and possession of a firearm by a felon in connection with the Fowler

Street break-in.

Corporal Carlos Lamberty and Detective Robert Ferencak interviewed Grady after his arrest and showed him still shots from the surveillance videos of the break-ins. Grady then admitted to his direct involvement in the Dexter Street break-in and admitted to his presence on Fowler Street around the time of that break-in. He implicated a man named Cedric Age as the perpetrator of the break-ins. Grady admitted to driving the gold Dodge Neon in the Fowler Street video and to being in the house on Dexter Street. He also admitted to knowing about the television taken from the Dexter Street house, which he believed was later sold for drugs. But Grady denied breaking into the Fowler Street house and said he had nothing to do with the missing guns.

On 11 June 2018, Grady was indicted for felony breaking and entering, felony larceny, injury to real property, possession of a firearm by a felon, and attaining habitual felon status, all in connection with the Fowler Street break-in. The State did not move forward with any charges related to the Dexter Street break-in because James Smith, the home's resident, later refused to cooperate with the prosecution.

On 4 March 2019, the case went to trial. Following a *voir dire* with the law enforcement officers involved, the trial court admitted the State's evidence regarding the uncharged Dexter Street break-in under Rule 404(b) over Grady's repeated objections. Officers Rose, Needham, Lamberty, and Ferencak testified to the details

of their investigation as described above. The trial court admitted Officer Rose's testimony about Smith's statements to him at the scene of the Dexter Street break-in, overruling Grady's hearsay objection. At the close of evidence, Grady moved to dismiss the charges and the trial court denied the motion.

On 7 March 2019, the jury convicted Grady of felony breaking and entering, felony larceny, and possession of a firearm by a felon. Grady then admitted his status as a habitual felon and also pleaded guilty to unrelated breaking and entering and larceny charges. The trial court sentenced Grady as a habitual felon to 111 to 146 months in prison plus restitution of $4,854.96 for breaking and entering, and concurrent sentences of 111 to 146 months for larceny and 120 to 156 months for possession of firearm by a felon. Grady also received a concurrent sentence of 12 to 24 months on the charges to which he pleaded guilty. Grady appealed.

## Analysis

### I.  Admission of Rule 404(b) evidence of Dexter Street break-in

Grady first argues that the trial court erred by admitting the State's Rule 404(b) evidence of the uncharged breaking and entering and larceny that occurred on Dexter Street on the same morning as the Fowler Street break-in at issue in this case. Grady contends that the evidence was inadmissible under Rule 404(b) because it merely "showed a propensity for him to commit the crime" and, even if it was admissible under Rule 404(b), it should have been excluded under Rule 403 because

its probative value was outweighed by the risk of unfair prejudice. We reject this argument.

This Court reviews the legal conclusion that evidence is, or is not, within the coverage of Rule 404(b) *de novo. State v. Beckelheimer*, 366 N.C. 127, 130, 726 S.E.2d 156, 159 (2012). We review the trial court's corresponding Rule 403 determination for abuse of discretion. *Id.* "A trial court may be reversed for an abuse of discretion only upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision." *State v. Cagle*, 346 N.C. 497, 506–07, 488 S.E.2d 535, 542 (1997).

Under Rule 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident." N.C. R. Evid. 404(b). Our Supreme Court has made clear that Rule 404(b) is a "general rule of *inclusion* of relevant evidence of other crimes, wrongs or acts by a defendant, subject to but *one exception* requiring its exclusion if its *only* probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." *State v. Coffey*, 326 N.C. 268, 278–79, 389 S.E.2d 48, 54 (1990). Thus, evidence of another offense "is admissible so long as it is relevant to any fact or issue other than

the character of the accused." *Id.* at 278, 389 S.E.2d at 54 (emphasis omitted).

Still, there are limits to the use of Rule 404(b) evidence. The "rule of inclusion described in *Coffey* is constrained by the requirements of similarity and temporal proximity." *State v. Al-Bayyinah*, 356 N.C. 150, 154, 567 S.E.2d 120, 123 (2002). These requirements can be satisfied where a defendant's prior wrongful acts were "part of the chain of events explaining the motive, preparation, planning, and commission of the crime." *State v. Parker*, 140 N.C. App. 169, 173, 539 S.E.2d 656, 660 (2000). "When the incidents are offered for a proper purpose, the ultimate test of admissibility is whether the incidents are sufficiently similar and not so remote in time as to be more probative than prejudicial under the balancing test" in Rule 403. *State v. Pruitt*, 94 N.C. App. 261, 266, 380 S.E.2d 383, 385 (1989).

We begin by examining whether the challenged evidence was admitted solely to show Grady had a propensity to commit the charged offenses. It was not. The evidence of the Dexter Street break-in was offered for proper Rule 404(b) purposes. *Coffey*, 326 N.C. at 278–79, 389 S.E.2d at 54; N.C. R. Evid. 404(b). Specifically, there was evidence of a break-in on Fowler Street. There also was evidence that a person in a red and black hoodie walked toward the Fowler Street residence around the time of the break-in and later walked away from it carrying a bag. But there was no direct evidence that this person in a red and black hoodie committed the Fowler Street break-in.

Thus, an important part of the State's case was presenting circumstantial evidence that this person in the red and black hoodie committed the crime. One permissible way to establish this fact was through evidence that a person matching that same description broke into a residence just one street over that same morning and stole a television.

This evidence was not used to show that the person in that red and black hoodie was Grady or that Grady was the type of person who breaks into people's homes. Rather, it showed that the same person likely committed both crimes because there were two similar break-ins that took place on neighboring streets, at around the same time, on the same day, by someone with the same general features, dressed in the same clothes. This evidence was a natural account of a chain of similar break-ins that occurred that day and was used to establish that the person observed by witnesses and security cameras on Fowler Street committed the break-in. It was therefore admissible under Rule 404(b). *Parker*, 140 N.C. App. at 173–74, 539 S.E.2d at 660.

We next consider whether the trial court abused its discretion by determining that the probative value of this evidence was not substantially outweighed by any prejudicial effect under Rule 403. *Pruitt*, 94 N.C. App. at 266, 380 S.E.2d at 385. In his appellate brief, Grady argues that this evidence was "overwhelmingly prejudicial to his defense" without explaining why.

To be fair, this evidence certainly was prejudicial to Grady's defense in the

sense that it was quite incriminating, but all evidence "which is probative in the State's case will have a prejudicial effect on the defendant." *Cagle*, 346 N.C. at 506, 488 S.E.2d at 542. Rule 403 addresses *unfair* prejudice. *Id*. We see nothing in this evidence that makes it so unfairly prejudicial that the trial court's decision to admit it was manifestly arbitrary and lacking in reason. *Id*. at 506–07, 488 S.E.2d at 542. Accordingly, the trial court did not abuse its discretion by determining that this evidence was admissible under Rule 403.

II.    **Admission of hearsay statements from the Dexter Street break-in**

Grady next argues that the trial court erred by admitting hearsay testimony from James Smith, the resident of the Dexter Street home. We also reject this argument.

"When preserved by an objection, a trial court's decision with regard to the admission of evidence alleged to be hearsay is reviewed *de novo.*" *State v. Johnson*, 209 N.C. App. 682, 692, 706 S.E.2d 790, 797 (2011). "Hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. R. Evid. 801(c). Under the hearsay rule, "[h]earsay is not admissible except as provided by statute or by these rules." N.C. R. Evid. 802.

Grady challenges the portion of Officer Rose's testimony in which the officer described what James Smith told him when he arrived in response to Smith's 911

call. In his appellate brief, Grady focuses entirely on the trial court's failure to determine that Smith was unavailable and the court's corresponding failure to conduct the "six-part inquiry to ascertain whether the hearsay evidence should be admitted" based on that unavailability.

We need not address this argument because this was not the hearsay exception asserted by the State or embraced by the trial court below. Instead, this case concerns the hearsay exception for present sense impressions in Rule 803. A "present sense impression" is defined as a "statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." N.C. R. Evid. 803(1).

"The basis of the present sense impression exception is that closeness in time between the event and the declarant's statement reduces the likelihood of deliberate or conscious misrepresentation." *State v. Blankenship*, 259 N.C. App. 102, 114, 814 S.E.2d 901, 912 (2018). "There is no rigid rule about how long is too long to be immediately thereafter." *Id*. Importantly, our Supreme Court has held statements to a law enforcement officer by someone who witnessed a crime are admissible as present sense impressions when the lapse in time between the witness's perception and their statement was solely the short amount of time it took for the witness to arrive in the presence of the officer. *See State v. Morgan*, 359 N.C. 131, 155, 604 S.E.2d 886, 900–01 (2004) (collecting cases).

Here, law enforcement received a call reporting a break-in on Dexter Street. Officer Rose arrived in response to that call at the same time that Smith, the resident of the home and the person who reported the break-in, also arrived. Smith was "agitated," "excited," and "angry." He explained to Officer Rose that his home had just been broken into and showed the officer video footage of the break-in that was automatically sent to Smith's cell phone through his home's security system after the system detected motion inside the home. Smith then examined his home and informed Officer Rose that a television was missing.

The time stamp on the security footage from Smith's phone was 10:17 a.m. Both Officer Rose and Smith arrived at the Dexter Street home within minutes after Smith viewed that footage and reported the crime.

In light of these facts, the trial court properly admitted Officer Rose's testimony under the present sense impression exception to the hearsay rule. Smith's statements were made within minutes after he first perceived the break-in through the security footage and then contemporaneously as he perceived the situation at his home when he arrived. These statements were "describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter" and thus properly fall within the exception for present sense impressions. *Morgan*, 359 N.C. at 154, 604 S.E.2d at 900.

We also note that, even if the challenged testimony—Officer Rose's testimony

about what Smith told him—was inadmissible hearsay, nearly all the key facts from that testimony also were admitted through other evidence, primarily from Officer Rose's own observations of the scene when he arrived. That testimony, combined with Grady's own admissions of his involvement in the Dexter Street break-in, left no reasonable possibility that, had this portion of Officer Rose's testimony been excluded as hearsay, the jury likely would have reached a different result. *State v. Ferguson*, 145 N.C. App. 302, 307, 549 S.E.2d 889, 893 (2001). Accordingly, even if we found error—and we do not—any error was harmless.

## III. Denial of motion to dismiss the possession of firearm charge

Finally, Grady argues that the trial court erred by denying his motion to dismiss the possession of a firearm by a felon charge. Grady contends that "there was no evidence whatsoever of any firearms either on or in the vicinity of" him in any witness account or security footage.

"This Court reviews the trial court's denial of a motion to dismiss *de novo*." *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). "Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000). "Substantial evidence is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78, 265 S.E.2d 164, 169 (1980). "In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994).

"Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence. If the evidence presented is circumstantial, the court must consider whether a reasonable inference of defendant's guilt may be drawn from the circumstances." *Fritsch*, 351 N.C. at 379, 526 S.E.2d at 455 (citation omitted).

"The offense of possession of a firearm by a convicted felon has two essential elements: (1) the defendant has been convicted of a felony, and (2) the defendant subsequently possessed a firearm." *State v. Floyd*, 369 N.C. 329, 333, 794 S.E.2d 460, 463 (2016). Grady challenges only the sufficiency of the evidence as to the possession element. Possession can be shown by circumstantial evidence. *State v. Marshall*, 206 N.C. App. 580, 583, 696 S.E.2d 894, 897 (2010).

Here, the State's evidence showed that Jason Gray had three guns and Game Stop bags in his house prior to the break-in and that he locked his house when he left home that morning. While Gray was gone, his next-door neighbor heard a loud noise

coming from the direction of Gray's house and then saw a man, later identified as Grady, walking away from Gray's house carrying a bag. The neighbor checked her surveillance footage and saw Grady approach the home with nothing in his hands and then leave a short time later carrying a Game Stop bag. Although no witnesses saw what was in the Game Stop bag, Mr. Overby testified that there were "things in that bag . . . you could tell by looking at it" because it "stuck out on different sides or whatever and you could tell there was weight in the bag." Shortly thereafter, the neighbors went to check on Gray's house, found the door was kicked in, called police, and waited outside for them to arrive. When Gray returned home after being notified of the break-in, he found that his three guns were missing. The neighbors did not see anyone else around Gray's house that day.

This evidence is readily sufficient to overcome a motion to dismiss. Viewed in the light most favorable to the State, the evidence established that there was a break-in at the Fowler Street house, that the only way the guns could have gone missing from the house were as a result of that break-in, and that Grady was the one who broke into the house. From this, the jury reasonably could infer that Grady stole the guns and carried them away. *Rose*, 339 N.C. at 192, 451 S.E.2d at 223; *Fritsch*, 351 N.C. at 379, 526 S.E.2d at 455. Accordingly, the trial court did not err by denying Grady's motion to dismiss.

## Conclusion

We find no error in the trial court's judgments.

NO ERROR.

Chief Judge McGEE and Judge HAMPSON concur.